Osia BARNES, Appellant,

v.

STATE of Indiana, Appellee.

No. 985 S 383.

Supreme Court of Indiana.

May 3, 1989.

Marce Gonzalez, Jr., Appellate Div., Lake Superior Court, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen. and Amy Schaeffer Good, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Rape, a Class A felony; he also was found to be an habitual offender. He received an enhanced sentence of seventy (70) years.

The facts are: The victim, J.J., first met appellant at the Lake County Jail where she was visiting her boyfriend. Shortly thereafter, appellant unexpectedly visited J.J. at her home in Gary, Indiana. He stated he had come to pick up some pictures, but then indicated that he would come back later and get them.

When he returned later, he used the telephone but again did not pick up the pictures. Appellant came back a third time for the pictures, and J.J. unlocked the door and opened it enough to stick the pictures through. At that time, the telephone rang, and J.J. tried to close the door; appellant, however, stuck his foot in the door and pushed it open. He then grabbed J.J. and said, "I'll kill you and your kids. All I want to do is have sex with you." He then twisted her arm behind her back, held a knife to her throat, and led her to a back bedroom where he removed her clothing. Over a period of approximately forty-five minutes he raped her twice.

Prior to trial, appellant's counsel filed a motion to transfer appellant to the Keeler Polygraph Institute in Chicago, Illinois for a polygraph examination. The motion was countersigned by the prosecuting attorney's office. The parties then appeared in open court where they entered into a stipulation that the results of the test would be admissible in any trial resulting from the examination. The court accepted the stipulation and entered an order accordingly.

At trial, the polygraph examiner was called to testify concerning the results of the test. During his testimony, the examiner stated he asked appellant the question, "Did you tell your attorney the truth about this case?" Appellant's counsel objected on the ground the question was irrelevant.

However, during argument of the issue before the judge, the objection was expanded to include the claim of a violation of the attorney/client privilege. The trial judge correctly observed that the polygraph examiner did not ask for any communications between attorney and client. He merely asked if appellant had told his attorney the truth. No matter what appellant's answer to that question might have been, it would not have disclosed any privileged communication. It was merely one in a series of questions calculated to give the examiner the opportunity to determine appellant's truthfulness concerning the commission of the crime.

The examiner testified that in his opinion appellant was not telling the truth when he answered "yes" concerning his truthfulness with his attorney. The examiner further testified that appellant was not telling the truth when he denied his attack on the victim.

The State correctly points out that this case is distinguishable from *Brown v. State* (1983), Ind., 448 N.E.2d 10. In the *Brown* case, the defendant's attorney hired a polygraph examiner to administer an examination to his client. It was not a situation where the defense and prosecution had agreed to an examination to be used in court but was an examination solely for the

edification of the attorney in preparing to represent the defendant.

This Court held that under such circumstances the polygraph examiner was an agent for the attorney and that the privileged communication rule would prevail. However, the Court further ruled that the defendant had waived the privilege by calling the examiner to the witness stand.

In the case at bar, appellant requested and the State agreed to the polygraph examination. The agreement was formalized in court where it was understood by both parties and the court that the examination was to proceed and the results thereof would be available at trial. The trial court was correct in holding that no privileged communication was violated and that the results of the test could be admitted as evidence.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.