Steven G. OWENS, Appellant–Plaintiff,

v.

BEST BEERS OF BLOOMINGTON, INC. and the Estate of Robert Haak, Deceased, Appellees–Defendants.

No. 53A05–9404–CV–132.

Court of Appeals of Indiana, Fifth District.

April 3, 1995.

Geoffrey M. Grodner, Suzannah Bex Wilson, Mallor Clendening, Grodner & Bohrer, Bloomington, for appellant.

Charles F. Cremer, Jr., John A. Cremer, Cremer & Miller, Indianapolis, Marguerite R. Shreve, Bloomington, for appellees.

## OPINION

SHARPNACK, Chief Judge.

In this interlocutory appeal, Steven G. Owens appeals the trial court's denial of his motion to compel answers to certain deposition questions. Best Beers of Bloomington, Inc. ("Best Beers") objected to the questions based on the attorney-client privilege. We reverse and remand.

Owens raises four issues on appeal, which we consolidate and restate as whether the trial court abused its discretion in determining that the certified deposition questions at issue sought information protected by the attorney-client privilege.

The facts show that Owens was employed by Best Beers from August 31, 1976, until Best Beers terminated his employment on January 21, 1991. During the time relevant to this action, Owens was acting as vice president and general manager of Best Beers. Robert Haak was president as well as a director and the majority, if not sole, owner of Best Beers. Haak is now deceased.

Best Beers had a distributorship agreement with Miller Brewing Company ("Miller"). In 1984, Best Beers' relationship with Miller began to deteriorate. On October 7, 1986, Best Beers received from Miller a no-

tice of intention to terminate the distributorship agreement. Haak instructed Owens to prepare a plan of action to address the deficiencies alleged by Miller. Despite the efforts of Haak and Owens, Miller terminated Best Beers' franchise on February 9, 1987.

After receiving notice of the termination, Haak and Owens met with attorney James R. Cotner to discuss filing a lawsuit against Miller. According to Owens, Haak asked Owens to assume responsibility for preparing the potential litigation against Miller, for coordinating the litigation activities with Best Beers' attorneys, and for assisting in preparing the case for trial. As compensation for his services, Owens alleges that Haak agreed to pay him fifty percent of any monies collected from Miller as a result of the litigation.

In July 1989, Haak, Owens, and Cotner again discussed the litigation against Miller. Cotner stated that his fees were going to be very high and offered to work on a one-third contingency. According to Owens, Haak and Owens then modified their prior agreement so that Owens would receive one-third of any monies recovered in the litigation against Miller.

Owens assisted Cotner in preparing the case against Miller for trial. According to Owens, he invested hundreds of hours in litigation-related activities at Haak's request in addition to performing his regular duties as an employee of Best Beers. On March 20, 1990, Best Beers recovered a money judgment against Miller for compensatory and punitive damages.

On February 11, 1993, the litigation against Miller was finally concluded when the Indiana Supreme Court affirmed the trial court's award of compensatory damages and vacated the award of punitive damages that Miller had been ordered to pay Best Beers. *Miller Brewing Company v. Best Beers of Bloomington, Inc.* (1993), Ind., 608 N.E.2d 975, 985. Best Beers and Haak refused to pay Owens the one-third percentage of the judgment Owens alleges he was owed. Best

Beers now denies that such an agreement was entered into by Haak and Owens. Owens contends that Cotner was present during several conversations between Haak and Owens in which the compensation agreement was discussed.[1] Following the Miller litigation, Owens was terminated by Haak several months after the Miller trial ended. Thereafter, Owens filed suit to recover on the alleged compensation agreement.

On December 15, 1993, Owens deposed Cotner. During the deposition, Owens asked Cotner questions about the alleged agreement between Best Beers and Owens. Counsel for Best Beers objected to these questions based upon the attorney-client privilege.

Owens moved to compel Cotner to answer the deposition questions. Following a hearing, the trial court upheld Best Beers' objections to Owens' motion to compel, finding that "[a]ll of the unanswered sixty-seven (67) certified questions seek information relating to Mr. Cotner's representation of Best Beers of Bloomington, Inc. in conflict with an attorney's obligation not to reveal such information." Record, p. 308. On Owens' motion, the trial court certified its order for interlocutory appeal and this court accepted Owens' petition pursuant to App.R. 4(B)(6).

A trial court exercises judicial discretion in ruling on discovery issues, and we will reverse only for an abuse of that discretion. *Bishop v. Goins* (1992), Ind.App., 586 N.E.2d 905, 907. In determining whether the trial court abused its discretion, we look to the provisions of Ind. Trial Rule 26(B). *Id.* Trial Rule 26(B), in pertinent part, states:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action ... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated

1. In addition to denying the existence of the subject compensation agreement, Best Beers denies that Owens was asked to assume responsibility for preparing the potential litigation against Miller, for coordinating the litigation activities with Cotner, and for assisting in preparing the case for trial.

to lead to the discovery of admissible evidence...."

T.R. 26(B)(1). In ruling on a discovery dispute, the trial court must determine whether the information sought meets two criteria: (1) the information must be relevant to the subject matter being tried; and (2) the information must not be exempted from discovery by privilege or immunity. *Bishop*, 586 N.E.2d at 907, fn. 2.

The attorney-client privilege is one such privilege by which the discovery of relevant information may be exempted.

"The attorney-client privilege applies in proceedings in which an attorney '... may be called as a witness or otherwise required to produce evidence concerning a client.' Ind. Professional Conduct Rule 1.6. In addition, IND.CODE § 34–1–14–5 states that '[t]he following persons shall not be competent witnesses: [ ... ] Third. Attorneys, as to confidential communication made to them in the course of their professional business, and to advice given in such cases.' The attorney-client privilege establishes a provision for a person to give complete and confidential information to an attorney, so the attorney may be fully advised in his services to this client. *Colman v. Heidenreich* (1978), 269 Ind. 419, 422, 381 N.E.2d 866, 868. At the same time it assures the client that the confidences will not be revealed. *Id.* However, it has been cautioned that since the privilege prevents the disclosure of relevant information and impedes the quest for the truth, the privilege should be narrowly construed. *In re Shargel* (2d Cir.1984), 742 F.2d 61, 62; *In re Special, September 1983, Grand Jury (Klein)* (S.D.Ind.1985), 608 F.Supp. 538, 542, *aff'd,* 776 F.2d 628; *accord Fisher v. United States* (1976), 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39, 51.

The privilege provides ' "that when an attorney is consulted on business within the scope of his profession, the communications on the subject between him and his client should be treated as confidential." ' *Colman*, 269 Ind. at 423, 381 N.E.2d at 869, (quoting *Jenkinson v. State* (1840), 5 Blackf. 465, 466). The privilege applies to all communications to an attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities. *Id.*"

*Hueck v. State* (1992), Ind.App., 590 N.E.2d 581, 583–84, *reh'g denied, trans. denied.* If a client makes particular communications during the course of a conversation with his or her attorney which do not concern the subject matter of the attorney-client relationship, the communications are not considered privileged. *Colman, supra*, 381 N.E.2d at 872. The burden to prove the applicability of the privilege is on the one who asserts it. *Id.* at 869. The applicability of the privilege must be established as to each question asked or document sought. *Walsh v. United States,* (7th Cir.1980), 623 F.2d 489, 493.

Best Beers argues that it can invoke the privilege to protect communications about any arrangement for compensation of Owens even though it denies that there were any such communications. We do not agree. If there were no such communications, as Best Beers contends, there are no confidential communications between attorney and client that would be compromised by requiring Cotner to simply respond that there were no such communications. At the least, Best Beers must show that there was an attorney-client relationship between it and Cotner in which Best Beers was seeking advice or other professional services with respect to the special compensation for Owens. *Colman, supra*, 381 N.E.2d at 869; *Walsh, supra*, 623 F.2d at 495. A court cannot make a determination in ignorance of the facts on which the privilege must depend. *Id.* at 493. If necessary, a court may conduct an *in camera* inquiry to inform itself sufficiently to act. *Id.* at 494, fn. 5.

In the instant case, we view Best Beers' invocation of the privilege in order to protect communications that it asserts never occurred to be an unjustifiable impediment of Owens' search for the truth. Thus, we hold that, upon remand, Owens may discover the fact of the existence or nonexistence of communications concerning the compensation agreement by compelling Cotner to answer the certified question or questions that the trial court determines are intended to seek

that fact. For example: *"Certified Question No. 17:* During that conversation were you aware of the existence of any agreement between Mr. Haak and Mr. Owens?" Record, p. 225.

For our purposes, we will assume that all communications that occurred when Haak, Owens, and Cotner met were about the proposed litigation against Miller.[2] Those communications fall into two categories. In the first category, we have, in effect, communications concerning contingent compensation to Owens from the proceeds of any recovery for his efforts to prepare the case for Best Beers. In the second category, we have, in effect, Best Beers in the person of its President, Haak, and its general manager, Owens, communicating with its attorney, Cotner. The communications in the second category are protected by the privilege from disclosure to permit the free exchange of information, ideas, and counsel so that Best Beers could best prepare its case. *See Estate of Voelker* (1979), 182 Ind.App. 650, 396 N.E.2d 398 (where legal advice of any kind is sought from an attorney, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by the client or his attorney, unless the client waives the exception).

As to the first category, we have, in effect, Best Beers in the person of its President, Haak, communicating with its employee, Owens, about what he would be paid for his special efforts on the Miller litigation. The key to resolution of this case as we see it is that as to the matter of compensation to Owens for his efforts in the Miller litigation, he and the corporation had adverse interests. Owens' interest was to obtain as much as he could. Best Beers' interest was to pay no more than necessary; e.g., no more than his previously set salary. Whether or not Cotner participated as an attorney for Best Beers in those discussions is not material.

Because the discussions related to what Best Beers would pay Owens, they could not be seen as confidential as to Owens. The attorney-client privilege does not exist unless the communication is confidential. *Lewis v. State* (1983), Ind., 451 N.E.2d 50, 55 (attorney and client's conversation overheard by police officer not privileged because not confidential); *see Colt v. McConnell* (1888), 116 Ind. 249, 19 N.E. 106, 109 ("Where both parties are present, declarations to an attorney are not privileged communications."); *Hanlon v. Doherty* (1887), 109 Ind. 37, 9 N.E. 782 (communication in presence of adverse party not confidential).

The following questions are a sampling of the certified questions which address communications in which Owens was participating as a third party. These questions seek information that is not protected by the attorney-client privilege:

*"Certified Question No. 32:* Were you present at any time when Mr. Owens and Mr. Haak discussed between themselves Mr. Owens receiving an interest in the judgment proceeds?

*Certified Question No. 33:* Would you describe when those discussions took place, where they took place, and who, other than Mr. Owens and Mr. Hack (sic) were present during those discussions?

*Certified Question No. 34:* As best you can recall, would you describe the substance of those discussions?"

Record, pp. 229–30.

■ Best Beers makes the argument that the protection of the privilege would be necessary to prevent Miller from learning of the arrangement (which it denies existed), which would have been devastating to the credibility of Owens as a witness in the Miller litigation. This argument is without merit. Miller would have been able to discover the fact that there was a contingent compensation arrangement for Owens' efforts in the Miller

---

2. Relying on *Colman, supra,* Owens argues that the communications between Owens, Haak, and Cotner regarding the compensation agreement were not privileged because such communications were unrelated to the Miller litigation for which Best Beers had retained Cotner as its attorney. We disagree. Unlike *Colman,* the two areas of communication in the instant case are related. Both concern the underlying Miller litigation. However, the adverse interest of a participant in the communication as to some of the communications is a factor not present in *Colman.* Thus, *Colman* is not applicable as argued by Owens.

litigation. It would have been relevant on issues of bias and financial interest of Owens as a witness in the Miller litigation. Best Beers could not have avoided revelation of that arrangement merely because it may have been made in the presence of its attorney. *Upjohn Co. v. United States* (1981), 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584. The arrangement has an existence—albeit nonphysical—of its own. That existence would be relevant, discoverable, and admissible. It did not become undiscoverable merely because it may have been made through confidential communications. The communications themselves may be protected by the privilege, but the fact of the arrangement for contingent compensation is not. *Id.*

■ Owens argues next that because some of the questions asked of Cotner pertained to the creation of a document that would have been prepared for Owens' signature in his individual capacity, the communications regarding the substance of that document are not privileged. We agree. Under Indiana law, statements made by a client to his attorney which are intended to be communicated to a third party are not confidential. *Sutton v. State* (1991), Ind.App., 571 N.E.2d 1299, 1302; *accord In re Sealed Case,* (D.C.Cir.1989), 877 F.2d 976, 978 (" 'if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information, "as well as the details underlying the data which was to be published," will not enjoy the privilege.' ") If, upon remand, the trial court determines that such a document exists or was intended to be created, and the contents of that document were intended to be communicated to Owens, Owens may discover the substance of that document.

The following certified questions are a sampling of the communications regarding the substance of the document intended to be communicated to Owens. These questions seek information that is not protected by the attorney-client privilege:

"*Certified Question No. 20:* Did you, Mr. Cotner, ever prepare an instrument to be signed by Best Beers and Mr. Owens that would have allowed Mr. Owens to take an advance against the proceeds of the law suit against Miller Brewing Company?

*Certified Question No. 21:* Who requested that you prepare such an agreement or instrument?

*Certified Question No. 22.[1]:* What were the contents of the instrument?

*Certified Question No. 22[.2]:* Do you currently have that instrument in your files?

*Certified Question No. 23:* If you do not have that instrument in your files do you know who has possession of the instrument?"

Record, pp. 226–27.

■ On the other hand, communications between Haak and Cotner, out of the presence of Owens, on the subject of Owens compensation which were intended to be held confidential would be protected from discovery. For example, question # 31 of the following series of certified questions could be protected from answer by the privilege:

"*Certified Question No. 29:* During your representation of Best Beers, did you have any discussions with Bob Haak concerning Steve Owens receiving any portion of the judgement to be obtained, or obtained, against Miller Brewing Company?

*Certified Question No. 30:* Would you describe when each of those discussions took place, where they took place, and whether any other person was present?

*Certified Question No. 31:* Would you describe the substance of each of those discussions?"

Record, p. 228. If the trial court determines that such discussions occurred out of the presence of Owens, the attorney-client privilege protects the substance of each of those discussions from being discovered by Owens.

■ Finally, Owens contends that not all of the certified questions pertained to communications between Cotner and Best Beers. Some, he argues, merely related to actions performed by specific individuals and to meetings which were held to decide who would perform those actions and when they would be performed. The attorney-client privilege only applies to communications. *Colman, supra,* 381 N.E.2d at 869. If a

question does not address a communication, the matter is not protected by the attorney-client privilege. *See Barnes v. State* (1989), Ind., 537 N.E.2d 489, 490 (question "Did you tell your attorney the truth about the case?" did not ask for the substance of a communication between attorney and client).

Owens argues that Cotner's answers to these particular certified questions would in no way disclose privileged communications. We agree. The following certified questions are a sampling of those which seek information unrelated to confidential communications between Cotner and Best Beers. These questions seek information that is not protected by the attorney-client privilege:

"*Certified Question No. 1:* Which brings me to my next question—could you describe what Mr. Weber did to assist in the preparation of the case?

*Certified Question No. 2:* Would you describe what Mr. Owens did to assist you in preparing the case for trial?

*Certified Question No. 3:* Was that assistance provided by Best Beers through Mr. Owens?

*Certified Question No. 4:* Was Mr. Weber directly involved in the preparation of the documents and the assembling of the information?

*Certified Question No. 5:* At any time during the representation, did you discuss with Mr. Haak and Mr. Owens, together, who was going to be responsible for assisting you in preparation of the case for trial.

*Certified Question No. 6:* When did you meet usually with Mr. Haak and Mr. Owens and discuss the assignment of responsibility for assisting you in preparation of the case?

*Certified Question No. 7:* Did you meet with them at any time subsequent to that initial discussion and discuss preparation and assignment of responsibility for preparation of the case?

*Certified Question No. 8:* Would you relate, please, the substance of those discussions, as best you can recall?

*Certified Question No. 9:* Would you please describe in detail what Steve Owens

did and what services he provided with regard to the Miller litigation?

*Certified Question No. 10:* Did Mr. Owens assist your firm in any way other than testifying during the actual trial itself?" Record, pp. 222–23.

Based on our review of the certified questions, we find that Owens may obtain responses to those certified questions which sought to discover the fact of the existence or nonexistence of a compensation agreement between Best Beers and Owens, and those questions which sought information regarding the agreement derived from discussions in which Owens participated, information regarding the creation and the substance of a document or documents prepared for communication to Owens in his individual capacity, and information regarding actions performed by individuals; i.e., information not addressing "communications." Beyond those examples of certified questions that we have presented which we have determined are not protected by the attorney-client privilege, we leave to the trial court the task of determining in which of the two categories of communications the other certified questions fall.

Accordingly, we reverse and remand to the trial court to conduct further proceedings consistent with this opinion.

REVERSED and REMANDED.

KIRSCH and RUCKER, JJ., concur.