In re the Contempt Findings Against Si-
mos KEFALIDIS and David C. Adams,
Appellant (Non–Parties Below),

Arising out of Barbara Janiszewski as Ad-
ministratrix of the Estate of Dennis
Janiszewski, Deceased, et al., Appellees
(Plaintiffs Below),

v.

Tonn & Blank, Inc., et al.,
Defendants Below.

No. 64A05–9712–CV–542.

Court of Appeals of Indiana.

June 30, 1999.

Richard Kammen, James T. Flanigan, McClure, McClure & Kammen, C. Joseph Russell George T. Patton, Jr., J. Taggart Birge, Bose McKinney & Evans, Indianapolis, Indiana, Attorneys for Appellants.

Robert P. Harper, Harper and Rogers, Valparaiso, Indiana, Attorney for Appellee.

## OPINION

MATTINGLY, Judge

Non-party witnesses Simos Kefalidis and David C. Adams (the witnesses) appeal the trial court's finding that they are in contempt for their refusal to answer certain questions during their depositions in a wrongful death action. They present one issue, which we restate as whether the trial court violated the witnesses' right against self-incrimination[1] by compelling their testimony when the witnesses had not been granted immunity from prosecution, when some potentially applicable statutes of limitations had not yet run, and when the trial judge denied the witnesses' request for an *in camera, ex parte* demonstration of the validity of their claims of Fifth Amendment privilege.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

These contempt findings arise out of a wrongful death action brought by Barbara Janiszewski (Janiszewski) as administratrix of the estate of Dennis Janiszewski against Tonn & Blank, a construction company, and other defendants. Dennis Janiszewski, an employee of Beta Steel, was killed when a pressure vessel exploded at the mill where he was working. Kefalidis and Adams are non-party witnesses in the wrongful death action. When Janiszewski deposed both witnesses, they both declined to answer certain questions, asserting their right of protection against self-incrimination. The questions the witnesses declined to answer involved, among other things, the relationship each had with Beta Steel, the training and experience each had with pressure vessels or welding, the relationship between Beta Steel and associated companies, and the names of other people who worked at Beta Steel or serviced the pressure vessel near the time of the explosion.

Both depositions were adjourned, and the trial court conducted a hearing on each witness' assertion of the privilege. During the Adams hearing, the judge asked Adams' counsel to explain, on the record, the reasons for Adams' refusal to answer the questions. In response, counsel asked the judge to allow an *in camera, ex parte* showing of why his client's assertion of the right was justified. In refusing an *in camera, ex parte* showing, the judge stated:

> If there's any explanation to be made, it's going to be made out here on the

---

1. Because we find the witnesses prevail under the self-incrimination protection provided by the Fifth Amendment to the United States Constitution, we need not address their alternative argument that Article I, Section 14 of the Indiana Constitution offers a broader protection against self-incrimination than does the United States Constitution.

record. It can be made in such a manner that it does not contain any admission, that it's not at all binding.

Frankly, I see no way, Mr. Russell, in any way, shape or form that Mr. Adams can be subjected to any criminal prosecution whatsoever, and if you would like to explain how that might be I'd be happy to listen to it.

I've thought about this since the last time we were here and the only potential criminal prosecution I see is against Beta Steel. So if you can explain otherwise to me, I would be happy to listen.

R. at 265–66. Adams' counsel declined to elaborate on the record about the potential for criminal jeopardy, contending that he was concerned about giving the state or federal authorities a "blueprint for prosecution." *Id.* at 267. The court then ordered Adams to answer the questions. The deposition reconvened. After Adams continued to assert his Fifth amendment privilege and refused to answer the questions, the trial court found him in contempt.

At the Kefalidis hearing, the deposition questions Kefalidis refused to answer were read to the judge. The judge ruled that

the only entity that has any legitimate right to claim a Fifth Amendment privilege is Beta Steel and they're a corporation and they're not being deposed as a corporation. So I'm going to find that the witness's claim of Fifth Amendment privilege is not valid in this case and order that he proceed to answer all questions related to this incident.

*Id.* at 221–22. Kefalidis also asked to make an *in camera, ex parte* showing of his reasons for asserting the privilege. The trial court denied his request, stating that "[Kefalidis] has no Fifth Amendment privilege in this case. It is not applicable to this case, and we're not going to be running back here with every question." *Id.* at 228.

When the Kefalidis deposition resumed, Kefalidis again declined to answer the questions and was found in contempt. This interlocutory appeal ensued.

## DISCUSSION AND DECISION

■ The Fifth Amendment protection against self-incrimination is applicable in any proceeding, whether civil or criminal, administrative or judicial, investigatory or adjudicatory. *Clifft v. Indiana Dept. of State Revenue,* 660 N.E.2d 310, 314 (Ind.1995). A trial court is authorized to determine whether an answer to a question proposed to a witness will incriminate the witness. However, in determining whether the answer might have that effect, the court is bound by the statement of the witness "unless it clearly appears from the examination and the circumstances before the court that the witness is mistaken in his conclusion that the answer will incriminate him, or that the witness' refusal is purely contumacious." *Northside Sanitary Landfill, Inc. v. Bradley,* 462 N.E.2d 1321, 1325 (Ind.Ct.App.1984).

■ The witness is excused from answering if the answer would tend to furnish one link in the chain of evidence necessary to convict him of a criminal charge. *Id.* at 1326. The witness is under no obligation to explain how the answer might tend to incriminate him as this would defeat the very object of the constitutional provision. *Id.* Still, whether an answer might be incriminating is ultimately to be decided by the judge, and not the witness:

[A] witness is not exonerated from answering because he judges that in doing so, he would incriminate himself; that is, 'his say-so does not of itself establish the hazard of incrimination.' *Hoffman v. United States,* (1950) [(1951)] 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118. The trial judge in appraising the claim 'must be governed as much by his personal perception of peculiarities of the case as by the facts actually in evidence.' *Hoffman, supra,* at 487, 71 S.Ct. at 818 (citation omitted).

*Id.* Thus, *Hoffman* instructs us that a trial court is to defer to a defendant's claim of privilege unless the trial judge determines it is *"perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tenden-

cy" to incriminate. 341 U.S. at 488, 71 S.Ct. 814 (emphasis in original, quotation omitted).

### 1. *Possibility of Prosecution*

■ The scope of the Fifth Amendment right against self-incrimination is not limited to testimony which might lead directly to a criminal conviction. It also includes evidence which would "furnish a link in the chain of evidence that could lead to prosecution," and evidence which a witness *"reasonably believes* could be used against him in a criminal prosecution." *Maness v. Meyers,* 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). A risk of prosecution which is "more than fanciful" is sufficient to sustain the assertion of the privilege. *In re Corrugated Container Antitrust Litig.,* 661 F.2d 1145, 1151 (7th Cir.1981).

■ The witnesses here note four reasons why there is a "more than fanciful" risk that they might be prosecuted and why their belief the information could be used against them in a criminal prosecution is reasonable:

(1) In light of the nature of the explosion which killed Dennis Janiszewski and two other people and the severity of that explosion, it is reasonable to believe that information about intentional, reckless, or negligent acts by persons involved in the explosion could lead to criminal prosecution;

(2) Both witnesses express their belief that the explosion is still being investigated by various state and federal entities such as the federal Bureau of Alcohol, Tobacco, and Firearms; the State Emergency Management Agency; and the federal and state Occupational Safety and Health Agencies. As a result, the witnesses assert they are subject to prosecution by at least three authorities: the Marion and Porter County prosecuting attorneys and the United States Attorney for the Northern District of Indiana;

(3) Neither witness has been granted immunity from prosecution by any prosecuting authority, as no indictment or information has been filed;[2] and

(4) The statutes of limitations for criminal violations that could apply to the explosion have not yet run.[3]

Out of the four issues raised, whether immunity has been granted or whether the statute of limitations has run[4] are recognized tests in assessing whether a witness faces a risk of prosecution. In *In re Folding Carton Antitrust Litigation,* the Seventh Circuit addressed risk of prosecution tests, and held that the right to assert the privilege does not depend on the *likelihood,* but on the *possibility* of prosecution:

> To the extent that an assessment of the probability of prosecution is significant in the trial court's evaluation of an asserted privilege, it is more properly accomplished through examination of the more traditional tests, *viz,* statute of limitations, immunity, double jeopardy. Short of the existence of one of these indicia of an absolute bar to subsequent prosecution, a judge's prediction as to the likelihood of a prosecutor filing an indictment is not dispositive in ascertaining the permissible scope of a claim of fifth amendment privilege.

609 F.2d 867, 872 (7th Cir.1979) (footnote omitted). The witnesses here have not been previously tried for crimes arising from the explosion, so double jeopardy does not bar their future prosecution. Further, as noted above, they have not been granted immunity from prosecution, and some, if not all, of the

---

**2.** *See* Ind.Code §§ 35–37–3–1 to –3 (addressing statutory immunity available with regard to questions asked of a witness "in a hearing or trial occurring *after an indictment or information has been filed"*) (emphasis supplied).

**3.** In her argument that the witnesses' refusal to testify was "contumacious," Janiszewski flatly asserts, without explanation, that "the statute of limitations has now run." Brief of Appellee at 13. The witnesses note, however, that the explosion occurred on March 27, 1996. At the time of the depositions, in November of 1997, the statute of limitations for any felony charges that might

arise from the incident had not run, *see, e.g.,* Ind.Code § 35–41–4–2(a)(1) (five-year limitations period for Class B, C, or D felony); *id.* § (b) (no limitations period for murder or Class A felony), nor had the limitations period run for even a misdemeanor charge, *see id.* § (a)(2) (two-year period for misdemeanors).

**4.** *Cf. Ford v. State,* 29 Ind. 541, 543 (1868) ("It has been held that if the witness is protected by the statute of limitations, he is bound to answer.").

applicable statutes of limitation have not run. As a result, the possibility that the witnesses might be prosecuted has not been foreclosed.

Aside from her apparently incorrect assertion that "the statute of limitations has now run," Janiszewski does not address the tests articulated in the *Folding Carton* decision. Rather, she points to the court's discretion to determine whether the witness' fear of incrimination is justified:

> [T]he court is authorized to determine whether the answer might criminate the witness, but that in determining this, the court is bound by the statement of the witness as to its effect unless it clearly appears from the examination and the circumstances before the court that the witness is mistaken and that the answer will not tend to criminate him, or that the witness' refusal is purely contumacious....

*Overman v. State,* 194 Ind. 483, 491, 143 N.E. 604, 607 (1924) (addressing the Indiana constitutional privilege against self-incrimination). We note that the federal standard is similar. *See Hoffman,* 341 U.S. at 486, 71 S.Ct. 814 (quoted by *Northside,* 462 N.E.2d at 1326).

Janiszewski points to some of the more general questions asked of the witnesses and argues "there is no implication of incrimination from either the answer or an explanation as to why it cannot be answered." Brief of Appellee at 9. She quotes a statement by the trial judge during the Kefalidis hearing:

> If the witness wants to claim privilege at least maybe he can answer questions like have you heard of something or other? The ridiculousness of the claim is part of what the court is considering here, on these questions. Obviously there's no

privilege, or no incrimination to saying I've heard of something. If that's the case, we're all in trouble because we've probably all heard of Alpha Steel.... So if admitting that incriminates us, that just illustrates the ludicrousness of the claim.

R. at 235. Based on the witnesses' failure to answer some very general questions,[5] and the fact that the witnesses did not present specific potentially applicable state or federal criminal statutes or administrative regulations to the court, Janiszewski argues the judge was within his discretion in deciding their fear of incrimination was not reasonable and was purely "fanciful."[6] We disagree.

In *Hoffman,* a federal grand jury was empaneled to investigate "rackets" in the district. Hoffman had a police record, and had admitted knowing William Weisberg, a witness who had been subpoenaed but who did not appear. After Hoffman refused to answer questions such as "What do you do now, Mr. Hoffman"; "Have you been doing the same thing you are doing now since the first of the year"; "When did you last see [Weisberg]"; and "Have you talked with him on the telephone this week," he was found in contempt. 341 U.S. at 481, 71 S.Ct. 814.

The Supreme Court reversed Hoffman's contempt charge. It noted that if a witness, upon interposing a claim of privilege against self-incrimination, were required to "prove the hazard in the sense in which a claim is usually required to be established in court," he would be compelled to surrender the very protection which the privilege guarantees. *Id.* at 485, 71 S.Ct. 814. Although answers to questions like those asked of Hoffman would ordinarily be harmless, in Hoffman's case the questions were designed to draw information as to Hoffman's contacts with a fugitive witness. *Id.* at 488, 71 S.Ct. 814.

---

5. Examples of some of the general questions the witnesses declined to answer are:
 Have you ever heard of a company called Alpha Steel? R. at 111.
 Do you know a fellow named Antonios Kostantinos? *Id.* at 112.
 Have you ever worked with pressure vessels? *Id.* at 109.
 Tell me how you heard of Beta Steel? *Id.* at 254.
 When, what years, did you know [Dennis Janiszewski]? *Id.* at 256.

6. Janiszewski also alleges, without reference to the record, that one of the witnesses is related to a high-ranking officer of Beta Steel and that the witnesses' attorney fees are being paid by Beta Steel. This, she argues, is evidence their refusal to testify is "purely contumacious." Brief of Appellee at 10. Because our rules require arguments on appeal to be supported by "citations to ... parts of the record relied upon," Ind. Appellate Rule 8.3(A)(7), we are unable to address this allegation.

The answers could have "forge[d] links in a chain of facts imperiling petitioner with conviction of a federal crime." *Id.* Thus, Hoffman "could reasonably have sensed the peril of prosecution for federal offenses ranging from obstruction to conspiracy." *Id.*

Hoffman was entitled to assert the privilege because it was not *"perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness' is mistaken, and that the answer[s] *cannot possibly* have such tendency" to incriminate. *Id.* (emphasis in original, quotation omitted). We reach the same conclusion in the case before us. In light of the nature and severity of the explosion at Beta Steel, we cannot say that it is perfectly clear that the answers to the questions posed to the witnesses could not possibly have tended to incriminate them.

Janiszewski argues the witnesses have failed to meet their burden[7] to establish that they have reasonable cause to apprehend danger from answering the questions posed to them because they "failed to make a record or otherwise meet their burden to show any possibility of prosecution." Brief of Appellee at 12. Because, as explained below, we believe the witnesses should have been permitted to establish such reasonable cause by means of an *in camera, ex parte* proceeding, we need not address this assertion.

Here, prosecution of the witnesses remains a possibility. They have not been granted immunity from prosecution, the statutes of limitations for criminal violations potentially arising from the explosions had not run, and prosecution of the witnesses would not be barred by the protection against double jeopardy. As in *Hoffman,* it is not "perfectly clear" that the witnesses' answers could not possibly have a tendency to incriminate them, and the trial court erred to the extent it denied their claim of privilege based on its

determination that their fear of prosecution was unreasonable.

### 2. *Denial of Adequate Review*

The witnesses contend they were unable to demonstrate the reasonableness of their fear of prosecution because the trial judge would neither consider their claim of privilege on a question-by-question basis[8] nor allow them to make an *in camera, ex parte* showing of the merits of their claim. We agree.

### A. *Question–by–Question Basis*

At witness Adams' hearing, the court reporter read some of the questions posed to Adams and Adams' responses asserting the privilege. The trial judge then stated "I think we can stop there. I think we have a good sampling for the record[.]" R. at 258. Similarly, Kefalidis asked the court to evaluate his claim of privilege on a question-by-question basis and the court stated "We're not going question by question. The court has found and ruled he has no Fifth Amendment privilege in this case. It is not applicable to this case, and we're not going to be running back here with every question." *Id.* at 228. The trial court, without determining on a question-by-question basis whether the witnesses' assertion of privilege was proper, stated that Adams was "not to invoke the Fifth Amendment privilege on any of the questions that relate to the incident ..." *id.* at 268, and that Kefalidis was ordered to "answer all questions related to this incident." *Id.* at 222.

Claims of privilege must be made and sustained on a question-by-question or document-by-document basis. *Hayworth v. Schilli Leasing, Inc.,* 669 N.E.2d 165, 169 (Ind.1996) (addressing a claim of attorney-client and work-product privilege). This permits the court to rule on the assertion of

---

7. As authority for her argument that this burden is on the witness who asserts the privilege, Janiszewski offers us the following citation: *"See Hoffman, supra* at 1324. 1325–1326." We note initially that in none of the three reporters which published *Hoffman* can any part of that decision be found at those pages. Furthermore, our independent review of *Hoffman* reveals no such statement explicitly imposing such a burden upon the witness.

However, other decisions at least suggest the witness has the burden to show his testimony might be incriminating. *E.g., Folding Carton,* 609 F.2d at 871 ("[w]hen a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster").

8. Janiszewski does not address this assertion of error in her brief.

privilege with specificity. *In re Walsh*, 623 F.2d 489, 493 (7th Cir.1980). Thus, in *United States v. Bodwell*, the court vacated a contempt citation against a witness and remanded the cause after the trial court failed to allow him to assert his Fifth Amendment privilege on a question-by-question basis and declined to conduct an *in camera* hearing on the merits of his claim. 66 F.3d 1000, 1002 (9th Cir.1995).[9]

The trial court erred when it declined to consider the witnesses' assertion of the privilege against self-incrimination on a question-by-question basis.

### B. *In Camera Ex Parte Review*

 The witnesses also assert the trial court erred by refusing to conduct an *in camera, ex parte* proceeding where the witnesses could explain their bases for asserting the privilege against self-incrimination. We agree. While a trial court must decide whether a claim of privilege against self-incrimination is valid, the witnesses argue they cannot be compelled to disclose the basis of the privilege in open court. They rely on *Hoffman*, where the Supreme Court stated that if a witness, upon interposing a claim of privilege against self-incrimination, were required to "prove the hazard in the sense in which a claim is usually required to be established in court," he would be compelled to surrender the very protection which the privilege guarantees. 341 U.S. at 485, 71 S.Ct. 814. To avoid the "cruel trilemma of self-accusation, perjury or contempt" from which the Fifth Amendment provides protection, *Pennsylvania v. Muniz*, 496 U.S. 582, 596, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), *quoting Doe v. United States*, 487 U.S. 201, 212, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988), *in camera, ex parte* evaluations have been endorsed. *See, e.g., United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir.1991).

A number of Indiana decisions have approved of such *in camera, ex parte* proceedings where other types of privilege have been asserted. In *Owen v. Owen*, 563 N.E.2d 605 (Ind.1990), our supreme court addressed the physician-patient privilege:

in those rare cases where the physician-patient privilege is properly invoked, it is incumbent on the party seeking to assert the privilege to identify to the court specifically which documents are believed to remain within the privilege, after which the court will review the contested documents in camera to ascertain their entitlement to the protection of the privilege.

*Id.* at 608, *citing Canfield v. Sandock*, 563 N.E.2d 526, 530–31 (Ind.1990). We noted in *Owens v. Best Beers, Inc.*, 648 N.E.2d 699, 702 (Ind.Ct.App.1995) that the applicability of the privilege (there, attorney-client) must be established as to each question asked or document sought. We then stated that a court could not make such a determination in ignorance of the facts on which the privilege must depend, and that "[i]f necessary, a court may conduct an *in camera* inquiry to inform itself sufficiently to act." *Id.*

In *Ray v. St. John's Health Care Corp.*, 582 N.E.2d 464 (Ind.Ct.App.1991), we addressed a trial court's grant of a blanket claim of "peer review" privilege regarding hospital documents, holding that "the trial court should have conducted an *in camera* review on a document-by-document basis to determine whether the materials sought were protected by the peer review privilege." *Id.* at 474. We noted concerns about the burden *in camera* review could impose on the trial court, but in light of safeguards against abuse, we stated "we do not believe that imposing upon the trial court a duty to view contested claims of privilege *in camera* will unduly waste judicial resources." *Id.* *See also Burns v. State*, 511 N.E.2d 1052, 1054 (Ind.1987) (trial court abused its discretion in failing to conduct *in camera* review of statements to determine validity of State's claim disclosure was protected by, *inter alia*, work-product privilege).

Janiszewski responds that such *in camera* review is discretionary, citing *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) and *United States v. Harris*, 542 F.2d 1283 (7th Cir.1976). Both of these cases can be distinguished from the case before us. *Zolin* did not involve the

---

9. *Bodwell* also relied on the fact the statute of limitations had not run as demonstrating the

witness' fear of criminal prosecution was reasonable. 66 F.3d at 1002 n. 2.

question whether a party *asserting* the privilege against self-incrimination is entitled to an *in camera* review; rather, it dealt only with whether such a proceeding is appropriate when the *opponent* of the privilege challenges the privilege on the basis of the crime-fraud exception. The Court there noted that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." 491 U.S. at 572, 109 S.Ct. 2619.

Similarly, in *Harris* the Seventh Circuit determined it was not error for the trial court to *accept* a claim of privilege without a hearing when the judge already had substantial background information on which to base his evaluation of the self-incrimination privilege. 542 F.2d at 1298. Thus, *Harris* and *Zolin* indicate it is within the trial court's discretion to **accept** a claim of privilege without an *in camera* review. However, neither decision supports Janiszewski's assertion that the court has the discretion to **deny** a claim of Fifth Amendment privilege without an *in camera* review.

The *Harris* court noted that a judge may consider facts not actually in evidence in determining the reasonableness of a claim of privilege. *Id.* Janiszewski appears to contend that the following statement by the judge demonstrates an *in camera* hearing was unnecessary and thus properly refused:

> If there's any explanation to be made, it's going to be made out here on the record. It can be made in such a way that it does not contain any admissions, that it's not at all binding.
>
> Frankly, I see no way, Mr. Russell, in any way, shape or form that Mr. Adams can be subjected to any criminal prosecution whatsoever, and if you would like to explain how that might be I'd be happy to listen to it.... The potential for prosecution can be explained without making any admission that would bind Mr. Adams or have Mr. Adams say anything. It can be done on the basis of a hypothetical.

R. at 265–66.

The trial court's statement does not reflect that the court made a decision that the witnesses' claims of privilege were unreasonable based on its consideration of facts not actual-ly in evidence. Rather, its decision could have had the effect of forcing the witnesses into the "cruel trilemma of self-accusation, perjury or contempt" from which the Fifth Amendment provides protection. We thus hold that the court abused its discretion in declining to conduct an *in camera* review of the witnesses' claims of privilege in order to inform itself of the bases of those claims.

### CONCLUSION

Because the witnesses were faced with the possibility of criminal prosecution in connection with the incident about which they were deposed, the trial court improperly determined that their fear of prosecution was unreasonable. As the witnesses may have had a reasonable fear of prosecution, the trial court was obliged to consider their claim of privilege *in camera* and on a question-by-question basis. We reverse the contempt finding and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, J., and SULLIVAN, J., concur.