

**FILED**

Mar 18 2015, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

<table>
</table>

| ATTORNEYS FOR APPELLANTS | ATTORNEY FOR APPELLEES |
|---|---|
| Jeremy B. Morris<br>Danny E. Glass<br>Fine & Hatfield, P.C.<br>Evansville, Indiana | Kevin R. Patmore<br>Patmore Law Office<br>Santa Claus, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David E. Price, Price & Associates, LLC, and Price & Collins, LLP, <br><br>*Appellants-Defendants,* <br><br>v. <br><br>Charles Brown Charitable Remainder Unitrust Trust, Charles Brown, and Charlotte Brown, <br><br>*Appellees-Plaintiffs.* | March 18, 2015 <br><br>Court of Appeals Case No. 74A01-1409-TR-401 <br><br>Appeal from the Spencer Circuit Court. <br>The Honorable Lucy Goffinet, Special Judge. <br>Cause No. 74C01-0905-TR-18 |

**Sharpnack, Senior Judge**

## Statement of the Case

In this interlocutory appeal, David E. Price, Price & Associates, LLC, and Price & Collins, LLP (collectively, Price), seek review of the trial court's denial of their motion for summary judgment. We affirm and remand.

## Issue

Price raises one issue, which we restate as: whether Price is entitled to judgment as a matter of law.[1]

## Facts and Procedural History

Charles Brown hired Price, a lawyer, to assist him in creating a trust. Price's firm drafted a trust agreement. Brown executed the agreement on March 9, 1995, creating the "Charles Brown Charitable Remainder Unitrust Trust" (the Trust). Appellants' App. p. 28. Brown's brother was the first trustee, but he was replaced by Brown's daughter. On January 1, 2000, Brown named Price as trustee of the Trust.

In 2006, the United States Department of Justice (DOJ) initiated a criminal case against Brown in the United States District Court for the Southern District of Indiana. In 2007, the DOJ amended the indictment to add charges against Price. The DOJ alleged that Brown and Price conspired to defraud the Internal Revenue Service, violated the prudent investor rule in making Trust

---

[1] Price has filed a motion for oral argument. We deny the motion by separate order.

investments, engaged in self-dealing from the Trust, distributed funds from the Trust contrary to statute, and diverted Trust funds for personal use. The DOJ further alleged that Brown and Price filed false tax returns in an attempt to underreport income.

[5] On March 7, 2008, Brown and Price, through their attorneys, executed a Joint Defense Agreement (JDA) with an effective date of September 19, 2007. The stated purpose of the JDA was to allow Brown and Price to bolster their defenses against the criminal charges by sharing "information which is privileged and/or confidential in nature" "without waiver of any applicable privilege or other protection against disclosure." *Id.* at 152. The JDA further provided that Brown and Price believed:

> [T]he law permits those who are pursuing a common interest to share and exchange information in a common effort to prepare for litigation in which they are parties, and to enhance their respective counsels' ability to provide informed legal advice, without thereby waiving any privilege or confidentiality with respect to such information.

*Id.* at 152-53.

[6] Brown and Price agreed to "share and exchange documents, factual information, oral statements, mental impressions, expert reports, correspondence, memoranda, summaries or reports of interviews with prospective witnesses, investigative reports, deposition summaries, deposition preparation materials and drafts of pleadings or other litigation documents and other materials, in whatever form ('Joint Defense Materials')." *Id.* at 153.

Further, "the exchange pursuant to this Agreement of Joint Defense Materials will not waive any applicable privilege or protection from disclosure. The joint defense privilege created by this Agreement may not be waived by the action of any single Party or its counsel." *Id.* at 154.

[7]     Among other caveats, the parties agreed in the JDA:

> [S]haring and exchange is premised on the understanding and agreement that (a) Joint Defense Materials transmitted among the Parties contain privileged, protected and/or confidential communications and/or privileged attorney work product; and (b) in accordance with applicable legal standards, exchanges have been and will be made only of information as to which the exchanging Parties believe they share common interests with respect to the Litigation.

*Id.* at 153-54.

[8]     In addition, Brown and Price agreed, "Any shared or exchanged information shall not be used for any purpose other than with respect to this litigation. Any party receiving Materials under this Agreement agrees not to use such materials against the Party that delivered or shared them." *Id.*

[9]     The JDA further provided:

> The joint defense privilege described above and recognized by this Agreement shall not be destroyed or impaired as to any Joint Defense Materials exchanged pursuant to this Agreement if adversary positions should subsequently arise between some or all of the Parties and regardless of whether the joint defense privilege becomes inapplicable after the emergence of adversary positions among Parties or this Agreement is terminated for any reason.

*Id.* at 155.

[10] The parties agreed in the JDA that not all information in their possession would be considered privileged:

> Nothing in this Agreement prohibits any Party of [sic] its counsel from sharing any materials or information obtained from a source other than one of the other parties to this Agreement (whether previously exchanged among the Parties as Joint Defense Materials or not) with any persons or entity not a party to this Agreement, and the sharing or disclosure of such information does not constitute and shall not be considered to be a waiver of any privilege or protection as to any other Joint Defense Materials exchanged between and among the Parties pursuant to this Agreement.

*Id.* at 156-57.

[11] Finally, the JDA provided, in relevant part:

> The exchange of Joint Defense Materials pursuant to this Agreement shall not preclude any of the Parties from pursuing subject matters reflected in Joint Defense Materials (even as against other Parties), so long as all applicable privileges or protections from disclosure are preserved.

*Id.* at 157.

[12] Both before and after the execution of the JDA, Brown, Price, and their attorneys participated in strategy sessions where they exchanged documents and information. Brown and Price's attorneys also conferred without their clients and shared information.

[13]     On April 9, 2009, Brown removed Price as trustee of the Trust. On that same date, while the criminal cases were pending, Brown and his wife, Charlotte, sued Price, alleging breach of trust, theft, criminal conversion, deception, attorney malpractice, and breach of fiduciary duty.

[14]     On May 21, 2009, Price filed, under a separate cause number, a Petition to Docket Trust Agreement, for Trust Accounting, and Appointment of Trustee. Brown, Charlotte, and the Trust cross-petitioned for an accounting from Price for his services as trustee, for ratification of Brown's termination of Price as trustee, and for "disgorgement of any and all fees or other monies lost, mismanaged or misappropriated by Price." *Id.* at 91. The trial court consolidated the Browns' lawsuit and Price's trust accounting action under the lower cause number set forth above.

[15]     On October 14, 2009, Brown, by counsel, notified Price of the termination of the JDA. Brown and Price were subsequently acquitted of all criminal charges.

[16]     Price filed a motion for summary judgment in this case. The Browns and the Trust did not file a response, but they appeared at oral argument and presented argument against Price's motion. The trial court denied Price's motion. Next, Price requested and received certification of the trial court's summary judgment order for interlocutory appeal. This Court's motions panel accepted the appeal for interlocutory review pursuant to Indiana Appellate Rule 14(B).

# Discussion and Decision

[17] Price argues that the Browns and the Trust's claims cannot go forward because the information and materials Brown and Price shared pursuant to the JDA to defend against the indictment "could never be separated from matters relevant to prosecution of the civil claims." Appellants' Br. p. 18. He thus concludes that the terms of the JDA and the sharing of information under the JDA bar the Browns and the Trust's claims, and "the only appropriate remedy available to Price is dismissal" of their claims. *Id.* at 20.

[18] An appellate court applies the same standard as the trial court when reviewing a grant or denial of summary judgment. *Herron v. Anigbo*, 897 N.E.2d 444, 448 (Ind. 2008). Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The Browns and the Trust did not file a response to Price's motion for summary judgment, so the parties agree that there are no disputes of material fact. Tr. p. 13. This case presents questions of law, which we review de novo. *Robinson v. Erie Ins. Exch.*, 9 N.E.3d 673, 674 (Ind. 2014).

[19] We first turn to the provisions of the JDA. The parties do not direct us to any Indiana authorities discussing such agreements, and our research has not

uncovered any Indiana cases that address such agreements in detail,[2] so we look to other jurisdictions for guidance.

[20] Joint defense agreements are based on the common interest privilege, also known as the common interest doctrine. The common interest privilege is an extension of the attorney-client privilege. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). In effect, the common interest privilege extends the attorney-client privilege to otherwise nonconfidential communications between parties represented by separate attorneys. *Id*. The common interest privilege "treats all involved attorneys and clients as a single attorney-client unit, at least insofar as a common interest is pursued." 2 Stephen A. Saltzberg, et al., *Federal Rules of Evidence Manual* 501-30 (10th ed. 2011). The privilege is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party. *BDO Seidman*, 492 F.3d at 815; *see Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002).

[21] The common interest privilege permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims. *Hunton & Williams v. U.S. Dep't of Justice*, 590

---

[2] *Biomet, Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 762 (Ind. Ct. App. 2003), *trans. denied*, involved a joint defense agreement, but the panel concluded that there were disputes of material fact as to: (1) whether a party to the agreement disclosed information that was received under the terms of the agreement; and (2) when the disclosures occurred. In the current case, no disclosures are alleged to have occurred. In another, much older case, *Scranton v. Stewart*, 52 Ind. 68, 80-81 (1875), the Indiana Supreme Court applied the common interest privilege in the context of a spousal relationship, which is not at issue here.

F.3d 272, 277 (4th Cir. 2010). The privilege has been recognized in cases for over a century. *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). It applies in civil and criminal litigation, and even in purely transactional contexts. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3rd Cir. 2007).

[22] The privilege is limited to those communications made to further an ongoing joint enterprise with respect to a common legal interest. *BDO Seidman*, 492 N.E.2d at 816; *see Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965) (statements to and among attorneys "should be privileged to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings"). It is fundamental that the privilege cannot be waived without the consent of all parties to the defense. *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 556 (8th Cir. 1990).

[23] The JDA is a contract and we review its terms according to principles of contract interpretation. The goal of contract interpretation is to ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement. *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). If the language is clear and unambiguous, it must be given its plain and ordinary meaning. *Id.* We construe the contract as a whole and consider all of the provisions, not just individual words, phrases, or paragraphs. *Van Prooyen Builders, Inc. v. Lambert*, 907 N.E.2d 1032, 1035 (Ind. Ct. App. 2009), *trans. denied*.

[24] In the JDA, Brown and Price did not explicitly waive their right to sue one another for alleged claims arising from their business relationships.[3] To the contrary, the clear and unambiguous language of the JDA contemplates that Brown and Price might become adversaries as to the subject matter reflected in their shared information. The JDA provides, in relevant part:

> The joint defense privilege described above and recognized by this Agreement shall not be destroyed or impaired as to any Joint Defense Materials exchanged pursuant to this Agreement if any adversary positions shall subsequently arise between some or all of the Parties and regardless of whether the joint defense privilege becomes inapplicable after the emergence of adversary positions among Parties or this Agreement is terminated for any reason.

Appellants' App. p. 155.

[25] The JDA further provides, "The exchange of Joint Defense Materials pursuant to this Agreement shall not preclude any of the Parties from pursuing subject matters reflected in [the Materials] (even as against other Parties), so long as all applicable privileges or protections are preserved." *Id.* at 157.

[26] Thus, according to the plain and ordinary meaning of the JDA's terms, the contract does not bar Brown, Charlotte, and the Trust's claims against Price. What the JDA does establish is that Brown and Price cannot use the materials

---

[3] One commentator has stated, "The risk that statements made in the common interest could later be used against the client by those within the client 'unit' can be eliminated by a provision in the common interest agreement providing that the signatories agree to waive all civil actions that they may now or later have against one another—or, more narrowly, that they waive the right to use information shared in the common interest against any member of the unit." Saltzberg at 501-36-37.

shared pursuant to the JDA against each other, and that the exchange of materials does not limit any privileges or work-product protections that would otherwise apply. *See id.* at 154 ("any shared or exchanged information shall not be used for any purpose other than with respect to this litigation"); 157 (even if parties adopt adversarial positions, "all applicable privileges or protections from disclosure" must be preserved). Brown, Charlotte, and the Trust conceded this point to the trial court. Tr. p. 14 ("If later [Brown] tries to use any communications that Price has searched [sic] privilege then certainly this Court could I believe bar him for [sic] using those privileged communications or testifying about any privileged communications").

[27] Price nonetheless argues that the sharing of privileged information between himself and Brown must bar Brown, Charlotte and the Trust's claims in their entirety because protecting the privileged communications will be too difficult. He cites *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), for the alleged principle that the exchange of privileged information must prevent claims such as the Browns' from going forward because a court must bar the "use of the information if it could have been obtained from a privileged source." Appellants' Br. p. 24.

[28] *Analytica* is factually distinguishable from this case because that case dealt with attorney disqualification based on prior representation and attorney fees, not with civil claims and privilege. Furthermore, neither *Analytica*, nor any other case cited by Price, granted the sort of absolute relief he seeks here.

[29] In any event, Price's reading of *Analytica*, and his concerns about the difficulties in trying this case, are contradicted by Indiana precedent. Claims of privilege cannot be used as a general bar to all inquiry or proof. Instead, the party seeking to assert a privilege has the burden to allege and prove the applicability of the privilege as to each question asked or document sought. *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 994 (Ind. 2014); *see* Indiana Trial Rule 26(B)(5)(a) (a party asserting a claim of privilege "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed"). Privileged communications are protected, but relevant facts are not. *See Owens v. Best Beers of Bloomington, Inc.*, 648 N.E.2d 699, 704 (Ind. Ct. App. 1995) (defendant could not prevent the disclosure of a compensation arrangement between itself and plaintiff merely because it was discussed in the presence of defendant's attorney).

[30] Further, there is nothing to show what evidence or communications are at issue, or that Brown, Charlotte, and the Trust could not prove their claims without disclosing communications that are privileged under the JDA. Brown and Price agreed that "any materials or information obtained from a source other than one of the other parties" could be shared with other persons without violating the JDA or waiving the privileges established by the JDA as to other communications. Appellants' App. at 156-57.

[31] Specific claims of privilege will need to be resolved as they are encountered in discovery or at trial.

Finally, Brown, Charlotte, and the Trust allege that they are entitled to appellate attorney's fees pursuant to Appellate Rule 66(E). That rule authorizes the Court to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith." *Id.* Damages may include attorney's fees. *Id.* The Court's discretion to award attorney's fees under Rule 66 is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *SCI Propane, LLC v. Frederick*, 15 N.E.3d 1015, 1029 (Ind. App. 2014). Although Price did not prevail, we cannot conclude that this appeal meets these criteria. We reject Brown, Charlotte, and the Trust's claim for appellate attorney's fees.

# Conclusion

For the foregoing reasons, we affirm the judgment of the trial court and remand for further proceedings.

Affirmed and remanded.

Baker, J., and Riley, J., concur.