Hilda Mae SCOTT et al., Plaintiffs,

v.

Lawrence P. McDONALD, M.D., et al., Defendants.

Civ. A. No. 75–161A.

United States District Court, N. D. Georgia, Atlanta Division.

Feb. 24, 1976.

L. Burke Lewis, Atlanta, Ga., for plaintiffs.

Robert G. Tanner, Thomas Marvin Smith, Jr., Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This diversity action for damages arising from defendants' alleged medical malpractice and negligence is presently before the court on defendant Doctors Memorial Hospital's [hereinafter the "Hospital"] motion for a protective order with respect to the answering of certain interrogatories propounded to it by plaintiff.

The gravamen of the complaint herein is that defendants negligently treated plaintiffs' decedent "with a course of therapy they knew or should have known to be inappropriate for the purpose and violative of any known and valid standard of care appropriate to" the treatment of lung cancer. Moreover, plaintiffs are further attempting to show that during the course of each treatment, defendant utilized a drug that is unapproved by the United States Food and Drug Administration, known as laetril/Vitamin B–17. While most of the discovery disputes *sub judice* may be most effectively disposed of by means of an in-chambers conference with counsel, it is apparent that the crux of the dispute concerns whether a recent Georgia statute providing for the confidentiality of the "records and proceedings of any hospital medical review committee, peer review committee, or medical organizational committee" is applicable

in an action grounded upon diversity of citizenship.

Ga.Code Ann. § 88–3204 provides in relevant part:

*Introduction of records into evidence; testimony of members of committees.* The proceedings and records of committees as described in the foregoing provisions of this chapter, *shall not be subject to discovery or introduction* into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee,

. . . .

The statute further prohibits requiring anyone who was in attendance at such a medical review and evaluation committee hearing to testify as to the evidence presented therein. However, information and documents otherwise available from original sources are not immune from discovery merely because they were presented during the proceedings of such a committee. *Id.*

Plaintiffs' interrogatory No. 21 requests information from defendant Hospital with respect to the names of any doctors associated with the hospital that it has terminated and/or investigated for possible termination of staff privileges in the last five years, the resolution of such investigation, and the reasons for termination, if applicable. Interrogatory No. 22 asks the names of patients whose medical treatment was directly or indirectly a factor in the investigation and/or termination of privileges, and No. 23 asks for a list of all persons who participated in the decision-making process.

■ Defendant Hospital has refused to answer the above interrogatories on the grounds that they embrace matters of *substantive law* made absolutely confidential under the statutory provisions of Georgia law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, defendant seeks a protective order. On the other hand, plaintiff argues

that Ga.Code Ann. § 88–3201 *et seq.* is either (1) unconstitutional as a prior restraint on freedom of speech [1] or (2) inapplicable because the statute did not go into effect until July 1, 1975, presumably after the review committee *sub judice* had already performed any investigation. Moreover, plaintiffs assert that although this is primarily a diversity action governed by state substantive law, there are, nevertheless, federal issues regarding whether the defendants violated federal law with respect to the utilization of unapproved drugs and transportation of such drugs in interstate commerce. *See* 21 U.S.C. § 331 *et seq.*

In the first instance, this court agrees with plaintiffs that defendant's argument that privilege is a matter of substance to be governed by the law of the state in which the federal court is sitting is "simplistic" and, therefore, not completely accurate. Thus, most courts considering the applicability of state-created privileges in federal diversity actions have adopted one of two approaches to the problem. Some courts have held that state created privileges regulate conduct outside the sphere of litigation and thus create substantive rights that under *Erie* should be governed by state law. *See, e. g., Palmer v. Fisher,* 228 F.2d 603 (7th Cir. 1955) *cert. denied* 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956); *Massachusetts Mutual Life Insurance Co. v. Brei,* 311 F.2d 463 (2d Cir. 1962). On the other hand, other courts have relied upon the very general language of former Rule 43(a) providing that evidence shall be admitted in accordance with the rules of evidence applied in the equity courts or under the rules applied in state courts in which the federal court is sitting, but that in any event, the statute or rule which favors the admissibility of evidence governs. *See, e. g. Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir. 1961); *Monarch Insurance Co. of Ohio v. Spach,* 281 F.2d 401 (5th Cir. 1960); *New York Life Ins. Co. v.*

---

1. It is clear that plaintiffs do not have standing to challenge the instant privilege statute on first amendment grounds since it is evident that their rights to expression have not been harmed, whatever the statute's effect on participants' rights to divulge the contents of review proceedings.

*Schlatter,* 203 F.2d 184, 188 (1953). Whatever the precedential value of these decisions, it is obvious to this court that Rule 43(a) has been substantially modified and that the newly enacted Federal Rules of Evidence with respect to privilege should govern the instant action.[2]

■ Rule 501 of the Federal Rules of Evidence provides the general rule to be applied with respect to privileges, and states, in pertinent part:

Except as otherwise required by the Constitution of the United States or provided by Act of congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. *However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.* (emphasis supplied).

There can be little dispute that the instant action, filed August 15, 1975, after the effective date of the Federal Rules of Evidence, must be governed by these rules.[3]

■ Thus, the question presented is whether the state-created privilege for participants in medical review proceedings is being asserted to be used "with respect to an element of a claim or defense as to which State law supplies the rule of decision" with the result that the information

requested by plaintiffs shall be privileged and immune from discovery. In the first instance, contrary to defendant's contentions, it is evident that Rule 501 does not provide a mechanical rule that in diversity cases, the state law of privilege shall apply and in federal question cases federal law applies. *See* 2 J. Weinstein, *Weinstein's Evidence* ¶ 501[02], at 501–18 (1975). Thus, the meaning of the phrase "with respect to an element of a claim or defense as to which State law supplies the rule of decision" undoubtedly poses some difficult problems of interpretation. *Id.* Some of these problems were resolved by the conference committee which considered the adoption of the proposed rules, and explained the language to mean that State law applies "if an item of proof tends to support or defeat a claim or defense . . . and if state law supplies the rule of decision for that claim or defense." Conference Report, Federal Rules of Evidence, 93d Cong., 2d Sess., Rep. No. 93–1597, p. 7 (Dec. 14, 1974), U.S.Code Cong. & Admin.News 1974, p. 7101. Simply stated, then, "the state law of privileges governs regardless of where in a line of proof the privileged information is utilized so long as state law controls the particular claim or defense incorporating the consequential, material proposition." J. Weinstein, *supra,* at ¶ 501[02], at 501–18.

■ Applying these principles to the circumstances herein, it is apparent that plaintiffs are attempting to discover information concerning any review proceedings that may have been held concerning the procedures utilized by defendant McDonald in treating plaintiffs' decedent. It is inconceivable that this information would not be

**2.** Rule 43(a) presently provides that:

In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an Act of Congress or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court. Moreover, with respect to the 1972 Amendment to Rule 43, the advisory committee notes state that:

Rule 43, entitled Evidence, has heretofore served as the basic rule of evidence for civil cases in federal courts. Its very general provisions.are superseded by the detailed provi-

sions of the new Rules of Evidence. The original title and many of the provisions of the rule are, therefore, no longer appropriate.

**3.** With respect to the effective date and the applicability of the new Federal Rules of Evidence, the statute expressly provides:

That the following rules shall take effect on the one hundred and eightieth day beginning after the date of the enactment of this Act [Jan. 2, 1975]. *These rules apply to actions, cases, and proceedings brought after the rules take effect.*

the type that would either support or defeat plaintiffs' claims for negligence, a cause of action created by state law. Under these circumstances, we conclude that the state-created privilege and immunity from discovery for the records and other information in medical review proceedings should be applied. Moreover, although plaintiffs have attempted to assert that defendants' violations of federal statutes regulating the use and transportation of unapproved drugs may establish a prima facie case of negligence, this action remains a diversity case, with some federal aspects, rather than a federal question case. *Compare Garner v. Wolfinbarger*, 430 F.2d 1093, 1098 (5th Cir. 1970).

Finally, while we agree with plaintiffs that the talismanic substance-procedure dichotomy suggested by defendant Hospital is overly simplistic and that the subsequent decision by the Supreme Court in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) is the proper standard to be applied, we, nevertheless, find that *Hanna* compels the conclusion that the state-created privilege should be applied. Thus, in *Hanna*, the Supreme Court, when considering whether, in a diversity action, a state rule requiring in-hand service on an executor must be applied rather than Rule 4(d)(1), Fed.R.Civ.P., the Court stated:

> It is true that both the Enabling Act and the Erie rule say, roughly, that federal courts are to apply state "substantive law" and federal "procedural" law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions. *When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.* . .
> "The purpose of the Erie doctrine, even as extended in York and Ragan, was nev-

er to bottle up federal courts with "outcome determinative" and "integral-relations" stoppers—when there are 'affirmative countervailing [federal] considerations' and when there is a Congressional mandate (the Rules) supported by constitutional authority." *Lumbermen's Mutual Casualty Co. v. Wright*, 322 F.2d 759, 764 (C.A. 5th Cir. 1963).

*Id.* at 471, 473, 85 S.Ct. at 1144, 1145, 14 L.Ed.2d at 16, 18. (emphasis supplied).

In the instant case, the applicable Federal Rule of Civil Procedure states that parties "may obtain discovery regarding any matter, *not privileged,* . . .", provided that the information sought is relevant or calculated to lead to the discovery of admissible or relevant evidence. Rule 26(b)(1), Fed.R.Civ.P. Moreover, the question of what matters are privileged in federal court must be determined in light of Rule 501 of the Federal Rules of Evidence which provides that in civil actions where "with respect to an element of a claim or defense as to which State law supplies the rule of decision," the state law shall apply. Simply stated, *Hanna v. Plumer* compels the utilization of the federal rule, if applicable, and not constitutionally impermissible. In this instance it is clear that the federal discovery rule taken in conjunction with the Federal Rule of Evidence governing privileges, mandates this court to apply the state created privilege both with respect to discovery and with respect to the evidence that may be presented at trial. *Hanna v. Plumer, supra.*

■ Plaintiffs have also argued, rather cogently, that even assuming arguendo that this court should hold that this state-created privilege may be applied in a federal court in a diversity case, that, nevertheless, the instant medical review proceedings (if any in fact were conducted) would undoubtedly have occurred before the effective date of the Georgia statute creating such privilege. Accordingly, plaintiffs argue that one of the four fundamental pre-conditions to the establishment of a privilege is lacking—the prerequisite that "[t]he communi-

cations must originate in a *confidence* that they will not be disclosed." 8 Wigmore, *Evidence,* § 2285, at 527, *quoted in Garner v. Wolfinbarger, supra,* at 1100. While it is evident that the relevant statute creating the privilege was not enacted until after the subject review proceedings may have taken place, it does not necessarily follow that such proceedings, when conducted, lacked the requisite confidentiality. The applicability and availability of a privilege should be governed by the current law in force at the time of trial and not at the time the alleged confidential communication took place. *Cf.* 97 C.J.S. Witnesses § 51, at p. 439 (1957) (question of competency of witnesses to testify is to be determined as of law in force at the date of trial).

▪ Plaintiffs also contend that Professor Wigmore's other tests for the establishment of a privilege have not been satisfied in that (1) the *relationship* is not one which in the opinion of the community ought to be *fostered* and (2) that the *injury* which would inure by the disclosure of the communications is not *greater* than the benefit that would be gained from the correct disposal of the litigation. *See* Wigmore, *supra,* § 2285, at 527. With respect to plaintiffs' former contention, it is evident to this court that the Georgia legislature has concluded that the confidentiality of the proceedings involving review and investigation of an individual physician's standard of care in the treatment of his patients should be preserved. The rationale for such statute is apparently to afford hospitals and similar institutions rendering medical care to examine, in the first instance, the propriety of procedures used within their institutions, in order to take curative action to remedy questionable procedures or to prevent the stigmatization of certain physicians under investigation that would necessarily follow from disclosure of such proceedings, whether the medical review committee's disposition is favorable or unfavorable to the physician under investigation. Moreover, with respect to plaintiffs' second contention, it is apparent to this court that the injury to the hospital's ability to make an in-house examination of the adequacy of the treatment afforded its patients is sufficiently great to warrant its confidentiality. Similarly, we remain unconvinced that the litigation might be wrongly decided in the absence of this information, since the statute does not immunize the production of documents from original sources that might have fortuitously been considered during the hearing, nor does it prevent some participant from the proceedings from giving testimony as to matters within his knowledge or as to an applicable standard of care. The statute merely prohibits requiring a member of the committee from testifying as to what he or another person might have said during the course of the proceedings. *See* Ga.Code Ann. § 88–3204. Thus, we conclude that plaintiffs have independent resources to obtain information in support of their claims without disturbing the confidentiality of these proceedings. Accordingly, defendant hospital's motion for a protective order with respect to the answering of plaintiffs' interrogatories Nos. 21, 22, and 23 is hereby GRANTED.

Due to the extensive nature of the dispute relating to the other interrogatories and in order to expedite consideration of these matters, the parties are hereby ORDERED to comply with the following:

(1) Counsel for the parties shall, within ten (10) days of the date of this order, meet and confer at a mutually convenient time and place in a good faith effort to settle all disputes with respect to discovery. It shall be the responsibility of counsel for plaintiff to set up such a conference.

(2) If counsel for the parties are unable to agree on a time and place for such a conference, then they shall notify the court immediately and a time and place will be set by this court.

(3) If counsel are unable to settle their differences with respect to the discovery sought by plaintiff, then they shall *jointly* formulate and file with the court, by no later than fifteen (15) days from the date of this order, a written stipulation dealing

with the instant motion for a protective order.[4]

(4) Counsel shall ensure that the stipulation fully complies, in form and content, with Local Rules 91.611–.614. In particular, the discovery requests not complied with, the objections, and the legal argument relating to the objections should be set out seriatim, in one document, and in separately numbered paragraphs.

In connection with their responsibilities at the conference, counsels' attention is directed to the following authorities: *Hickman v. Taylor,* 329 U.S. 495, 507–08, 67 S.Ct. 385, 391–92, 91 L.Ed. 451, 460 (1947); *Berger v. Brannan,* 172 F.2d 241, 243 (10th Cir. 1949); 28 U.S.C. 1927.

IT IS SO ORDERED.

---

4. On receipt of such stipulation the court will, if warranted, schedule a hearing to dispose of the matters therein.