**Jane DOE (whose true name is confidential), Personal Representative of the Estate of John Doe (whose true name is confidential), deceased, Plaintiff,**

**v.**

**The AMERICAN NATIONAL RED CROSS, d/b/a American Red Cross Central South Carolina Chapter S.C. Regional Blood Services, Defendant.**

Civ. A. Nos. 3:91–0039–19, 3:91–0040–19.

United States District Court,
D. South Carolina,
Columbia Division.

June 10, 1992.

Charles L. Henshaw, Jr., Benjamin M. Mabry, Columbia, S.C., for plaintiff.

Stephen G. Morrison, James F. Rogers, Stuart Murray Andrews, Jr., Columbia, S.C., for defendant.

## ORDER ON MOTION FOR RECONSIDERATION

SHEDD, District Judge.

This matter is before the Court on plaintiff's motion for reconsideration. By Order dated March 31, 1992, 788 F.Supp. 884, the Court ruled that certain information which plaintiff sought from defendant through discovery interrogatories,. relating to the identity of an HIV-infected blood donor ("the Donor"), is privileged information not subject to disclosure under S.C.Code Ann. § 44–29–135, and Regulation 61–21G(2)(d), promulgated by the South Carolina Department of Health and Environmental Control ("DHEC"). *See* S.C. Reg. Vol. 15, Issue 5 (May 24, 1991). Based on this ruling, the Court denied plaintiff's motion to compel defendant to disclose information concerning the identity of the Donor and granted defendant's motion for an order protecting it from being compelled to make the disclosure.[1] In her motion for reconsideration, plaintiff asserts that the Court gave improper retroactive application to Regulation 61–21G(2)(d), and that the Court denied plaintiff her right to a "remedy" in violation of Article 1, section 9 of the South Carolina Constitution. For the reasons set forth below, the Court will deny plaintiff's motion.

I

Plaintiff initially contends that the Court improperly applied Regulation 61–21G(2)(d) retroactively. In support of this position, plaintiff argues that defendant allegedly knew the identity of the Donor "through some source" by September 21, 1989, and DHEC did not promulgate Regulation 61–21G(2)(d) until May 24, 1991. Therefore, according to plaintiff, the information released by DHEC to defendant about the Donor's identity "could not have been made pursuant to the current version of Regulation 61–21G(2)(d)." Pl. Mem., at 3. While plaintiff correctly points out that there is a general presumption under South Carolina law that regulations are not to be applied retroactively unless there is specific provision or clear intent to the contrary, *see, e.g., Hyder v. Jones,* 271 S.C. 85, 245 S.E.2d 123, 125 (1978), that principle is not applicable in this case for two reasons.[2]

First, it is clear that Regulation 61–21G(2)(d) is not being applied retroactively in this case. Although plaintiff makes much of the fact that DHEC released the information concerning the Donor's identity to defendant before Regulation 61–21G(2)(d) became effective, the appropriate time frame for determining the applicability of Regulation 61–21G(2)(d) is not when DHEC released the identity of the Donor to defendant; instead, it is when plaintiff is seeking to gain access to the Donor's identity. *See Scott v. McDonald,* 70 F.R.D. 568, 573 (N.D.Ga.1976) ("The applicability and availability of a privilege should be governed by the current law in force at the

1. Regulation 61–21G(2)(d) permits DHEC to disclose to blood collection entities such as defendant the identity of an HIV-infected individual who DHEC knows has donated blood to the entity, and specifically provides:

    The entity which collected the blood … must not release to any other person the information identifying the donor provided by the Department [DHEC] and such information must be kept strictly confidential.

Section 44–29–135, under which Regulation 61–21G(2)(d) was promulgated, prohibits disclosure of this type of information by DHEC, except in certain specified circumstances, even under subpoena.

2. A regulation is applied retroactively if it is applied to conduct or events occurring before the effective date of the regulation. *Allied Corp. v. ACME Solvents Reclaiming, Inc.,* 691 F.Supp. 1100, 1110 (N.D.Ill.1988).

time of trial and not at the time the alleged confidential communication took place"). While DHEC's disclosure of the identity of the Donor to defendant may have preceded the promulgation of Regulation 61–21G(2)(d), defendant is now bound to keep the information relating to the Donor's identity "strictly confidential" and not to release it. Under these circumstances, the application of Regulation 61–21G(2)(d) is not retroactive.

■ Second, even assuming *arguendo* that Regulation 61–21G(2)(d) is being applied retroactively, this application is not improper because the privilege created by the regulation is procedural rather than substantive, and under South Carolina law, procedural regulations may be applied retroactively. *Bartley v. Bartley Logging Co.*, 293 S.C. 88, 359 S.E.2d 55, 56 (1987). Regulation 61–21G(2)(d) is designed to keep possibly relevant and otherwise admissible information from being disclosed. It does not impair the substantive law of, or impair plaintiff's substantive right to bring, any cause of action. *See Samuelson v. Susen,* 576 F.2d 546, 552 (3d Cir.1978) (holding Ohio statutory evidentiary privilege to be procedural and therefore applicable even though the lawsuit was commenced prior to the effective date of the statute). Accordingly, because the privilege created by Regulation 61–21G(2)(d) is procedural, the Court may properly give it retroactive application.

## II

Plaintiff's second argument raises a question of state constitutional law. Relying on Article 1, section 9, of the South Carolina Constitution of 1970, which provides: "All courts shall be public, and every person shall have speedy remedy therein for wrongs sustained,"[3] plaintiff asserts that the Court's application of Regulation 61–21G(2)(d) is a "restriction on [her] right to fully explore the question of whether negligence in donor screening caused the death of her husband" and that "[t]he effect of this denial is to prevent [her] from proving that a wrong was sustained," thereby denying her a "remedy." Pl.Mem., at 5. Plaintiff's argument is misplaced.

The remedy clause of Article 1, section 9 "is not a guarantee of full compensation to all injured persons...." *Wright v. Colleton County Sch. Dist.,* 301 S.C. 282, 391 S.E.2d 564, 570 (1990). Rather, its purpose is "to secure to the inhabitants of the state, for which the constitution was made, access to the courts for redress of any injury which they may have received." *Central R.R. & Banking Co. v. Georgia Constr. & Inv. Co.,* 32 S.C. 319, 11 S.E. 192, 203 (1890).[4] Although not directly on point, the South Carolina Supreme Court has on several occasions been confronted with claims of violation of the constitutional remedy clause and has provided some guidance as to what constitutes such a violation. *See, e.g., Wright,* 391 S.E.2d at 570 (statutory limitation of recovery under state tort claims act did not violate Article 1, section 9 remedy clause); *Maner v. Maner,* 278 S.C. 377, 296 S.E.2d 533, 535 (1982) ("lax observance of ... regulations prescribed by the statute and the rules of court for perfecting appeals can but lead to unnecessary delay in the final disposition of causes in our courts, and thus work infringement of the constitutional guaranty ... that 'ev-

---

**3.** Plaintiff specifically relies upon the second clause of this provision, to which the Court will refer as the "remedy clause."

**4.** The Court in *Central R.R. & Banking Co.* was construing Article 1, section 15, of the Constitution of 1868, which read: "All courts shall be public; and every person, for any injury that he may receive in his lands, goods, person, or reputation, shall have remedy, by due course of law and justice, administered without unnecessary delay." *See* 11 S.E. at 203. Section 15 of Article 1 of the 1868 Constitution is the predecessor to section 15 of Article 1 of the Constitution of 1895, which is identical to section 9 of Article 1

of the 1970 Constitution. There is little reported legislative history of Article 1, section 9 of the 1970 Constitution, *see generally Final Report Of The Committee To Make A Study Of The South Carolina Constitution of 1895,* at 14–15 (1969); and of the analogous 1895 and 1868 versions. For a general discussion of the history of this type of constitutional provision, *see Meech v. Hillhaven West, Inc.,* 238 Mont. 21, 776 P.2d 488 (1989); *Gibson v. West Va. Dept. of Highways,* 185 W.Va. 214, 406 S.E.2d 440 (1991); Comment, *Constitutional Guarantees Of A Certain Remedy,* 49 Iowa L.Rev. 1202 (1964).

ery person shall have speedy remedy therein for wrongs sustained' "); *State v. Gibbes*, 171 S.C. 209, 172 S.E. 130, 133–34, *aff'd*, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342 (1933) (emergency statute temporarily vesting in the Governor control of banks and forbidding legal proceedings against banks without the Governor's approval was proper exercise of the legislature's power and did not violate constitutional right to a remedy); *First Carolinas Joint Stock Land Bank of Columbia v. Stuckey*, 170 S.C. 86, 169 S.E. 843, 845 (1933) ("If a defendant in a lawsuit can file, and continue to file, amended pleadings, it will be impossible for a plaintiff to have any remedy at all in the courts, much less the 'speedy remedy' guaranteed to him by the Constitution").[5]

While the issue raised by plaintiff is one of first impression in South Carolina, courts in other jurisdictions, interpreting analogous constitutional provisions, have rejected arguments substantially similar to plaintiff's. For example, in *Perl v. Omni Int'l of Miami, Ltd.*, 439 So.2d 316 (Fla.Ct. App.3d Dist.1983), the plaintiff brought an action for slander based on his employer's alleged false statements to the Florida Department of Labor and Employment Security regarding the plaintiff's claim for unemployment compensation. By statute, communications between an employer and the labor department were deemed privileged and could not be made the subject matter or basis for any suit for slander or libel. 439 So.2d at 317. The plaintiff conceded that the statute barred his claim; however, he argued that the statute was "unconstitutional as it denie[d] him his right of access to the courts as guaranteed by Article I, Section 21 of the Florida Constitution," 439 So.2d at 317, which provided: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." The court rejected the plaintiff's argument,

noting that because the statute did not abolish a cause of action that had previously existed, it "cannot possibly constitute a denial of the right of access to the courts" under Article I, section 21. 439 So.2d at 317.

Similarly, in *Eubanks v. Ferrier*, 245 Ga. 763, 267 S.E.2d 230 (1980), a medical malpractice action, the plaintiff sought during discovery to obtain records and proceedings of the hospital review committee which, by statute, were not subject to discovery or introduction in a civil action against a provider of professional health services arising out of the matters which were the subject of the evaluation and review by the committee. 267 S.E.2d at 231–32. The trial court denied the plaintiff's discovery request and the plaintiff appealed, arguing before the state supreme court that the statute infringed on her right of access to the courts. The supreme court disagreed noting that the statute "does not deprive the medical malpractice plaintiff of his or her right to access to the courts; it merely withholds from the plaintiff a certain type of evidence which would otherwise be available to him or her." 267 S.E.2d at 233.

Finally, in *Coughlin v. Westinghouse Broadcasting and Cable, Inc.*, 603 F.Supp. 377 (E.D.Pa.), *aff'd*, 780 F.2d 340 (3d Cir. 1985), *cert. denied*, 476 U.S. 1187, 106 S.Ct. 2927, 91 L.Ed.2d 554 (1986), the plaintiff in a libel action against a media defendant sought to obtain through discovery, among other things, the confidential sources used by the defendant in its story and outtakes of videotape not included in the allegedly libelous broadcast. 603 F.Supp. at 380. The district court denied the plaintiff's discovery request based on a state statute which shielded members of the media from being compelled to disclose the source of any information they obtained for use in their reports. *Id.* In making this ruling,

---

**5.** In *Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978), the supreme court, in holding that a statute of repose on actions against architects, engineers, and contractors in the real estate industry was violative of equal protection, expressly avoided the issue of whether the statute of repose violated the Article 1, section 9 reme-

dy clause. 241 S.E.2d at 740. Recently, in *Snavely v. Perpetual Fed. Sav. Bank*, 412 S.E.2d 382 (S.C.1991), the supreme court upheld the revised version of the statute of repose involved in *Broome* against both equal protection and due process challenges. The court in *Snavely* did not address the remedy clause issue.

the court rejected the plaintiff's argument that the statute violated his right under Article 1, section 11 of the Pennsylvania Constitution, which provided: " 'All courts shall be open; and every man for an injury done him in his ... reputation shall have remedy by due course of law.' " 603 F.Supp. at 382–83.[6]

Although these cases are not determinative of the interpretation to be given to Article 1, section 9 of the South Carolina Constitution, they are persuasive authority that plaintiff's argument is without merit.[7] Based on these authorities, in light of the intent of Article 1, section 9, as expressed and applied by the South Carolina Supreme Court, the Court concludes that the application of Regulation 61–21G(2)(d) does not deny plaintiff her constitutional right of access to the courts of South Carolina for her alleged wrong and therefore, does not deprive her of a "remedy" within the meaning of Article 1, section 9 of the South Carolina Constitution of 1970. Instead, it merely precludes her from obtaining certain privileged information which she contends is critical to establishing her case. Like all other evidentiary rulings, the Court's application of Regulation 61–21G(2)(d) undoubtedly will have an effect on her case. While the effect of this evidentiary ruling on the ultimate merits of this case remains to be seen, plaintiff is certainly not without a "remedy" within the meaning of Article 1, section 9.

### III

Based on the foregoing, the Court hereby ORDERS that Plaintiff's Motion For Reconsideration be DENIED.

IT IS SO ORDERED.

---

**6.** *See also Rosen v. N.L.R.B.*, 735 F.2d 564, 576 (D.C.Cir.1984) ("the fact that some useful testimony is barred by a privilege simply has not been held to deny a litigant due process in a civil proceeding); *Samuelson*, 576 F.2d at 552–53 (finding no violation of the plaintiff's federal constitutional right of access to courts based on statute creating privilege on medical review committee deliberations).

**7.** The Court notes that plaintiff's argument, if carried to its fullest extent, would mean that all statutes of limitations, statutes of repose, evidentiary privileges, and discovery rules could be construed to deprive an individual of a "remedy" under Article 1, section 9.