**Randall L. LAHR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A02–0001–CR–28.

Court of Appeals of Indiana.

July 14, 2000.

Rehearing Denied Sept. 11, 2000.

John Pinnow, Greenwood, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Following a jury trial, Randall L. Lahr was convicted of two counts of forgery,[1] Class C felonies, and obstruction of justice,[2] a Class D felony. He now appeals, raising the following issues for review:

I. Whether the trial court abused its discretion in allowing his former attorney to testify over his objection that such testimony violated the attorney-client privilege.

II. Whether his convictions for both forgery and obstruction of justice violate the Indiana constitutional prohibition against double jeopardy.

We affirm in part and reverse in part.

---

1. *See* IC 35–43–5–2.

2. *See* IC 35–44–3–4.

## FACTS AND PROCEDURAL HISTORY

Lahr was confined at the Grant County Security Complex ("jail") from November 26, 1997 until January 15, 1998, for charges unrelated to this appeal. During this period of incarceration, Lahr sent Lieutenant Jail Commander Michael Lowe multiple grievance letters. On January 12, 1998, Lahr battered fellow inmate William Perkins and was subsequently charged with aggravated battery. Lahr was arrested on the aggravated battery charge on May 26, 1998, and held at the jail pending trial. The trial court appointed Kenneth Kauffman to represent Lahr in the aggravated battery trial, which was scheduled to begin on January 25, 1999.

On January 24, 1999, while Kauffman visited Lahr at the jail, Lahr produced two forged grievance letters, dated December 4, 1997, and January 8, 1998, that he had allegedly sent to Lowe. In the letters, Lahr complained about Perkins provoking him and requested that Perkins be moved from the cellblock where Lahr was assigned. The bottom of the letters contained forged responses from Lowe. Believing the documents to be authentic, Kauffman filed a notice of supplemental discovery compliance the next day – the day of trial – and identified the documents as exhibits that may be offered at trial.

After Lowe denied both receiving the forged grievance letters and writing the responses, police searched Lahr's cell and found other grievance letters containing genuine responses from Lowe in a manila envelope. One such letter to Lowe requested that Lahr be brought to court for a CHINS hearing concerning his daughter. Lowe wrote a response on the letter, which stated: "The Court has been made aware of your whereabouts," signed his name, and sent his response back to Lahr. A second grievance letter concerned complaints about medical treatment in which Lowe responded on the letter, "If this grievance is a request for us to fire Dr. Oliver, your request is denied. . . ."

Frederick Panhorst, a handwriting expert, examined the grievance letters found in Lahr's cell, as well as the forged letters Lahr provided to Kauffman. Panhorst concluded that the responses contained on the bottom portions of the two forged letters were carbon tracings of actual responses that Lowe had made to the prior grievances from Lahr. Carbon rubbings and pencil markings were found on portions of Lowe's responses. Panhorst also found an indented impression of the forged letter dated January 8, 1998, on an actual grievance letter dated December 15, 1998. Kauffman did not offer the forged grievance letters at Lahr's aggravated battery trial once it was determined they were not authentic. Lahr ultimately was convicted by a jury of the aggravated battery.

The State subsequently filed two forgery charges and an obstruction of justice charge against Lahr. During this trial, the State called Kauffman as a witness. Over Lahr's objection, Kauffman testified that on the eve of trial Lahr provided the documents to Kauffman without an explanation as to why he had not provided them to Kauffman sooner. Kauffman further testified that Lahr produced the documents from a manila envelope he usually carried and that there was no indication that anyone else had written the letters.

The jury convicted Lahr of two counts of forgery and obstruction of justice. The trial court merged the two forgery convictions and imposed consecutive sentences of eight years for the forgery conviction and two years for the obstruction of justice conviction. This sentence was further ordered to be served consecutively to a separate twenty year sentence for the aggravated battery conviction. Lahr now appeals.

## DISCUSSION AND DECISION

Lahr initially challenges the trial court's ruling allowing Kauffman to testify at his forgery and obstruction of justice trial about alleged confidential communications

between himself and Kauffman. Lahr contends that such communications were protected by the attorney-client privilege, which he did not waive. The State, on the other hand, argues that the trial court properly allowed Kauffman's testimony because no attorney-client privilege existed with respect to the information Lahr communicated to Kauffman because such information was in furtherance of a crime or fraud.

■■■ IC 34-46-3-1 provides in pertinent part as follows: "Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." The attorney-client privilege protects against judicially compelled disclosure of confidential information. *Canfield v. Sandock,* 563 N.E.2d 526, 529 (Ind. 1990). The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself. *Id.* The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Furthermore, the privilege allows both the attorney and the client to give complete and confidential information, so that both may be fully advised regarding the attorney's services to the client, and the client is assured that confidences are not violated. *Hartford Financial Servs. Group, Inc. v. Lake County Park & Recreation Bd.,* 717 N.E.2d 1232, 1235 (Ind.Ct.App.1999).

Professor Wigmore summarized the basic rule defining the attorney client privilege:

"(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

8 Wigmore, Evidence § 2292 (McNaughton rev.1961). Without the privilege, a free flow of information from the client to the attorney could not be assured.

■■■ Yet, not every communication between an attorney and client is deemed a "confidential communication" entitled to a reasonable expectation of confidentiality. *Corll v. Edward D. Jones & Co.,* 646 N.E.2d 721, 725 (Ind.Ct.App.1995). Generally, information with respect to attorney's fees and a client's identity are not protected by the privilege. *Id.* Further, communications intended by the client to be made public are not considered privileged because there is no reasonable expectation of confidentiality surrounding such information. *Id.* Here, Lahr clearly intended the two letters to be made public and therefore had no reasonable expectation of confidentiality with respect to the documents.

■■■ Further, the attorney-client privilege is not absolute, and sometimes the larger societal interest in preventing illegal conduct outweighs the equally important interest of safeguarding confidential communications. In such situations, the crime-fraud exception applies. Here, in determining that Kauffman could testify, the trial court relied upon *Green v. State,* in which our supreme court recognized the crime-fraud exception:

"[An] attorney and client may not conspire to commit a crime and then contend that the communications between them as to the conspiracy is privileged. A fraudulent intent as well as criminality of purpose may well remove the veil of secrecy from communications between attorney and client; where an attorney is consulted for the purpose of obtaining advice as to the preparation of a fraud, or in aid or furtherance thereof. The

communications made to him by one having such purpose in view are not, according to most authorities, privileged."

257 Ind. 244, 255–56, 274 N.E.2d 267, 273 (Ind.1971) (citing *Clark v. United States,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933)). In *Clark,* the United States Supreme Court noted that the attorney-client privilege exists until it is abused and such abuse is established to the satisfaction of the trial court:

"There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. But this conception of the privilege is without support in later rulings.... To drive the privilege away, there must be 'something to give colour to the charge'; there must be 'prima facie evidence that it has some foundation in fact.' When that evidence is supplied, the seal of secrecy is broken.... Nor does the loss of the privilege depend upon the showing of a conspiracy, upon proof that client and attorney are involved in equal guilt. The attorney may be innocent, and still the guilty client must let the truth come out."

*Clark,* 289 U.S. at 15, 53 S.Ct. at 469–70 (citations omitted). The rationale underlying the crime-fraud exception is to assure "that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989).

It is clear that the attorney-client privilege is to be used to protect legitimate confidential client communications, not as

a sword for suppressing the truth. This principle was reiterated in *United States v. Collis,* 128 F.3d 313 (6th Cir.1997), where the Sixth Circuit was faced with a similar set of facts as the case before us. The defendant in *Collis* provided a forged letter to his attorney for submission as an exhibit in a probation revocation hearing. Unaware of the forgery, the attorney provided the letter to the court. Thereafter, Collis was charged with obstruction of justice. At the subsequent trial, the trial court determined that the crime-fraud exception applied, and therefore allowed Collis's former attorney to testify about receiving the forged letter from his client and the circumstances surrounding such receipt.

In order for the crime-fraud exception to apply, the Sixth Circuit articulated a two-part test: First, to defeat the privilege, the moving party must make a prima facie showing that a sufficiently serious crime or fraud occurred, and second, must then establish some relationship between the communication at issue and the prima facie violation. *Id.* at 320 (citing *In re Antitrust Grand Jury,* 805 F.2d 155, 164 (6th Cir. 1986)). In order for the moving party to satisfy the prima facie showing, the evidence presented must be such that " 'a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud.' " *Id.* Applying this test, the Sixth Circuit held that the government made a prima facie showing of fraud based upon uncontroverted evidence establishing the letter was forged and the defendant was the only one with a motive to submit the letter. *Collis,* 128 F.3d at 321. The court further determined that the government established a relationship between the communication and the prima facie violation. *Id.* Therefore, the crime-fraud exception applied, and the attorney's testimony was properly admitted into evidence.

■ Based upon the foregoing, we hold that the trial court properly allowed Kauffman's testimony as evidence. The communications between Lahr and Kauffman are excepted from the attorney-client privilege

because they were undertaken for the purpose of committing or continuing a crime or fraud. The undisputed evidence establishes that Lahr forged the two letters for the purpose of bolstering his self-defense argument in the aggravated battery case. Lahr enlisted the aid of his attorney in furtherance of a continuing crime or fraud, and information concerning this subterfuge is not protected by the attorney-client privilege. Lahr's communications to his attorney fall within the crime-fraud exception to the attorney-client privilege and were properly admissible into evidence.

Lahr finally argues that his convictions for both forgery and obstruction of justice violate the Indiana constitutional prohibition against double jeopardy. We agree.

Two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State*, 717 N.E.2d 32, 49–50 (Ind.1999). Lahr concedes that his convictions are separate and distinct under the same elements test because each requires proof of an additional fact that the other does not. We therefore proceed to the actual evidence test. The actual evidence test requires that we look at the evidence presented at trial to determine whether each challenged offense was actually established by separate, distinct facts. *Id.* at 53. As our supreme court explained:

> "To show that two challenged offenses constitute the 'same offense' in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish elements of one offense may also have been used to establish the essential elements of a second challenged offense.' "

*Id.*

Here, to prove that Lahr was guilty of forgery, the State had to show

that Lahr, with intent to defraud, made or uttered a written instrument in such a manner that it purports to have been made by another person. IC 35–42–5–2. To establish that he was guilty of obstruction of justice, the State had to show that Lahr made, presented, or used a false record, document, or thing with intent that the record, document, or thing, material to the point in question, appear in evidence in an official proceeding or investigation to mislead a public servant. IC 35–44–3–4(4).

The evidence at trial revealed that on the eve of trial, Lahr provided Kauffman with two grievance letters that Lahr purportedly wrote to Lowe complaining about the battery victim. These letters contained Lowe's alleged written response to the complaints, which were later proved to be traced forgeries. Believing the letters to be authentic, Kauffman listed them as exhibits that the defense may offer at trial. In actuality, the evidence showed that Lahr did not write the grievance letters intending to send them for the purpose of complaint, but instead wrote the letters, and traced Lowe's responses from letters, after perpetrating the aggravated battery. We agree with Lahr that the actual evidence the State used to prove forgery also proved that Lahr was guilty of obstruction of justice. The State's theory, and one which there is a reasonable possibility that the jury adopted, was that Lahr obstructed justice by using forged documents to mislead the aggravated battery jury. Because Lahr's convictions for both forgery and obstruction of justice violate the Double Jeopardy Clause of the Indiana Constitution, we vacate the conviction and sentence for obstruction of justice.

Affirmed in part, reversed in part.

BAKER, J., and RILEY, J., concur.