**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**Robert Jeffrey PELLEY,**
**Appellee–Defendant.**

**No. 71A03–0305–CR–163.**

Court of Appeals of Indiana.

Dec. 19, 2003.

Transfer Granted March 19, 2004.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

George E. Horn, Jr., Jesse M. Barrett, Barnes & Thornburg, South Bend, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Robert Pelley, his father ("Reverend Pelley"), and stepmother ("Dawn") engaged in counseling sessions from 1988 to 1989. In 1989, Reverend Pelley, Dawn, and Pelley's two sisters were murdered and Pelley was charged with four counts of murder. The State subpoenaed all counseling records from the Pelley family's counseling sessions. The counseling center refused. Following a hearing, the trial court quashed the subpoena. The State appeals the quash. We affirm.

### Issues

The State raises two issues for our review which we restate as follows:

1. Whether the trial court properly found that the social worker/client privilege retroactively applied to communications made before its enactment; and

2. Whether the communications fell within any of the exceptions to the social worker/client privilege.

### Facts and Procedural History

From May 20, 1988, through April 27, 1989, Pelley, Reverend Pelley, and Dawn engaged in counseling services at Family and Children's Center (the "Center") in South Bend. The Pelleys met individually and collectively with personnel at the Center on at least twelve occasions. Social worker Mabel Davis compiled progress notes from the sessions with the Pelleys.

On April 29, 1989, Reverend Pelley, Dawn, and their two daughters were murdered in their home. Pelley was charged with four counts of murder on August 7, 2002. On August 22, 2002, the State issued a subpoena duces tecum to the Center for "[a]ny and all counseling records from the Rev. Robert J. Pelley family from 1986–1989." Appellant's Appendix at 30(a). On February 26, 2003, the Center filed a motion to quash the subpoena, alleging that the counseling records were privileged under Indiana Code section 25–23.6–6–1, the social worker/client privilege. The Center also argued that the communications did not fall within the "homicide exception" to the privilege codified at Indiana Code section 25–23.6–6–1(1).

The State objected to the motion to quash, arguing that the statute creating the social worker/client privilege was not retroactive and therefore, did not extend to communications made to Davis by members of the Pelley family prior to the enactment of the statute. Alternatively, the State argued that, even if the statute was retroactive, the communications fell within the "homicide exception." Following a hearing and an in camera review of the documents, the trial court quashed the subpoena, finding that the statute applied to the communications made by the Pelley family to Davis between 1986 and 1989 and that the communications did not relate directly to the fact or immediate circumstances of said homicide. This interlocutory appeal ensued.

### Discussion and Decision

#### I. Standard of Review

The grant or denial of a discovery motion is within the trial court's discretion and will be overturned only for an abuse of discretion. *Andreatta v. Hunley*, 714 N.E.2d 1154, 1156 (Ind.Ct.App.1999), *trans. denied.* An abuse of discretion in this context occurs only if the order is unreasonable in light of all the attendant circumstances and is prejudicial to a party's rights. *Id.*

#### II. Social Worker/Client Privilege

The social worker/client privilege is codified at Indiana Code section 25–23.6–6–1, which provides, in pertinent part:

Matters communicated to a counselor in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person....

The effective date of the statute was July 1, 1990. The statute is silent regarding its application to communications made before the effective date.

The State contends that, because the communications from the Pelley family to Davis occurred before the statute was enacted, the statute does not cover the communications. In other words, they are requesting that this court not apply the statute retroactively to cover earlier communications.

The Center, however, contends that the date of the communication is not the defining date under the statute, but rather the date of discovery request. As the State did not request the communications from the Center until 2002, the Center contends that the statute need not be applied retroactively to cover the communications. Because this question arises before the question of retroactivity, we must decide first which date is the determinative date for a discovery request.

### A. Date of Communication or Date of Disclosure?

 The common law recognized no privilege for confidential communication between social workers and their clients. Indiana created the privilege through its enactment of Indiana Code section 25–23.6–6–1. Evidentiary privileges are generally looked upon with disfavor by the courts and commentators. *Ernst & Ernst v. Underwriters Nat'l Assurance Co.*, 178 Ind.App. 77, 381 N.E.2d 897, 901 (1978). Moreover, certain specific privileges, which were unknown at common law, are particularly disfavored and are therefore strictly construed in order to limit their application. *Id.*

If a statute is unambiguous, we may not interpret it, but must give the statute its clear and plain meaning. *Autobanc Corp. v. Hodges Towing Serv.*, 793 N.E.2d 248, 251 (Ind.Ct.App.2003) (citing *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind.2002)). In examining the specific language of the statute, we note that the statute provides that communications made to a social worker by a client are privileged and "may not be disclosed by the social worker or clinical social worker to any person." The strict interpretation of the statute suggests that it is precluding the disclosure by the social worker to any other person rather than merely protecting the communication between the social worker and the client. This would lead us to believe that the date of disclosure is the determinative date for discovery requests regarding privileges.

The Center directs our attention to other jurisdictions which have held that the date of the discovery request is the defining date. For example, in *Doe v. Amer. Nat'l Red Cross*, 790 F.Supp. 590 (D.S.C. 1992), the widow of a patient who received a transfusion of HIV-contaminated blood sued the hospital that performed the transfusion. The plaintiff sought discovery regarding the infected donor. After the transfusion, but before the lawsuit, South Carolina adopted a regulation making privileged the identity of an HIV-infected blood donor. Although the parties argued the issue of retroactivity, the court held that the appropriate time was not when the agency released the identity of the donor to the defendant, but rather the date the plaintiff sought to gain access to the donor's identity. *Id.* at 591. The court noted that the statute was not in effect when the defendant learned of the identity of the donor, but that the statute currently prevented the defendant from divulging such information. *Id.* at 592. Therefore, the court held that the commu-

nications were privileged and could not be divulged. *Id.* at 594.

The *Doe* court relied on *Scott v. McDonald,* 70 F.R.D. 568 (N.D.Ga.1976). In *Scott,* the court considered a statute making certain hospital records confidential. The plaintiff sought discovery of records prepared before the statute was passed. The court denied the discovery, holding that the "applicability and availability of a privilege should be governed by the current law in force at the time of trial and not at the time the alleged confidential communication took place." *Id.* at 573.

We find *Doe* and *Scott* to be persuasive. As in those cases, the statute creating the social worker/client privilege in Indiana was not in existence at the time of the communication. However, once it was enacted, it affected discovery requests which were issued after the date the statute became effective. As the State did not request the information until after the privilege was created, the statute prevented the Center from providing the State with the communication records.

B. Retroactivity of the Privilege

■ Notwithstanding our above determination that the date of disclosure is the determinative date, we believe it also necessary to address the State's arguments regarding the retroactivity of the privilege. Because the statute on social worker/client privilege is in derogation of the common law, it is strictly construed. *Matter of C.P.,* 563 N.E.2d 1275, 1277 (Ind. 1990) (discussing the physician/patient privilege). For this reason, and because laws creating privileges "prohibit the ascertainment of truth in many controversies," the courts do not extend the scope of the privilege by implication. *Id.* (citing *Alder v. State,* 239 Ind. 68, 74, 154 N.E.2d 716, 719 (1958)). This approach is consistent with the U.S. Supreme Court's rule that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Id.* (citing *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974)).

Section 25–23.6–6–1 restricts the evidence that can be discovered in a judicial proceeding. "Rules and laws with respect to privileges apply at all stages of all actions, cases, and proceedings." Ind. Evidence Rule 101(b). In conjunction with the Indiana Rules of Evidence, evidentiary privileges—whether existing at common law or created by statute—limit the evidence a party can obtain and present to support its case. *See Rocca v. S. Hills Counseling Center, Inc.,* 671 N.E.2d 913, 917–18 (Ind.Ct.App.1996) (noting that the attorney-client privilege is enforced by statute and rules of conduct).

In this regard, common law or statutory privileges, such as those governing information between attorneys and clients, physicians and patients, etc., operate in the same manner as evidentiary restrictions in the Rules of Evidence. Our supreme court has recognized that laws governing the use of evidence apply retroactively. In *Kimberlin v. DeLong,* 637 N.E.2d 121 (Ind.1994), *cert. denied,* 516 U.S. 829, 116 S.Ct. 98, 133 L.Ed.2d 53 (1995), the court considered an appeal of a defendant who had been sued, in 1980, for wrongful death in connection with a bomb he allegedly planted in 1978. The defendant had been convicted in a separate criminal proceeding in 1981 of causing personal injury to the plaintiffs through the use of the bomb. The court allowed the plaintiffs to introduce evidence of the conviction, due to a 1982 statute making evidence of such a conviction admissible in a civil action. The defendant argued that the trial court impermissibly granted the statute retroactive effect. Our supreme court, however, stated that the statute, as an evidentiary rule,

was procedural and was, therefore, retroactive. *Id.* at 125. Following our supreme court's holding in *Kimberlin,* we believe that the privilege is a procedural rule and may therefore be applied retroactively.

 Even if we were to hold that the privilege is a substantive rule rather than a procedural rule, it may still be applied retroactively if it is shown to be a remedial law. The general rule is that, unless there are strong and compelling reasons, statutes will not be applied retroactively. *Bourbon Mini–Mart, Inc. v. Gast Fuel & Servs., Inc.,* 783 N.E.2d 253, 260 (Ind.2003) (citing *Martin v. State,* 774 N.E.2d 43, 44 (Ind.2002)). An exception to this general rule exists for remedial statutes, statutes intended to cure a defect or mischief that existed in a prior statute. *Id.* Ultimately, however, whether or not a statute applies retroactively depends on the Legislature's intent. *Id.* That is, when a remedial statute is involved, a court must construe it to effect the evident purpose for which it was enacted. *Id.* As a result, "remedial statutes will be applied retroactively to carry out their legislative purpose unless to do so violates a vested right or constitutional guaranty." *Id.*

To determine whether the social worker/client privilege is remedial, the Center directs our attention to the procedural history of *Matter of C.P.,* 563 N.E.2d 1275 (Ind.1990). In *C.P.,* the State filed a petition alleging that C.P., a sixteen-year-old, was a delinquent child by reason of incorrigibility. C.P.'s mother executed a consent to disclose confidential information regarding disclosure of information to the State involving treatment of C.P. and his mother at a counseling center.

At a hearing, the State called Mark Brown, a social worker and therapist from the center, to testify. Brown had provided therapy, diagnosed and treated C.P. during 1987. C.P. objected to Brown's testimony, asserting the physician/patient privilege. Another witness introduced records that he had received from the center pursuant to the consent given by C.P.'s mother. C.P. objected to the introduction of the records, based in part on the physician/patient privilege. The court overruled C.P.'s objections and C.P. appealed.

This court examined the physician/patient privilege and stated that we could not extend the physician/patient privilege to include adjunct personnel. *Matter of C.P.,* 543 N.E.2d 410, 412 (Ind.Ct.App.1989), *aff'd,* 563 N.E.2d 1275 (Ind.1990). Specifically, this court stated, "We question whether the services received by C.P. are medical treatment as contemplated by the privilege statute." *Id.* By strictly interpreting the physician/patient privilege, this court held that Brown could not be classified as a physician and, therefore, the privilege did not apply. *Id.*

The State contends that the social worker/client privilege could not be a remedial statute because it was enacted prior to our supreme court's decision in *C.P.* The statute was effective July 1, 1990, and the supreme court's decision was handed down December 13, 1990. However, as noted above, the statute was enacted after this court's decision in *C.P.* This court issued its opinion on September 14, 1989, stating that Brown was not a physician and the privilege did not apply. As the social worker/client privilege was enacted following our decision, we must consider that the statute may have been remedial.

In *Darnell v. State,* 674 N.E.2d 19 (Ind. Ct.App.1996), this court was asked to reexamine its prior holding in which we refused to acknowledge a privilege between a nurse and his or her patient absent an express provision created by the legisla-

ture.[1] Darnell and his wife were socializing and consuming alcoholic beverages with some friends at home when Darnell's wife began to flirt with one of the guests. Darnell stabbed the guest twice in the chest with a knife. As a result of his own injuries sustained in the fight, Darnell was taken to the emergency room. There, he was treated by an on-duty emergency room nurse. While she treated Darnell, he revealed that an intruder had entered his house and the intruder had stabbed him, but he had not stabbed the intruder. He also stated that he had been drinking before the struggling ensued.

Darnell was charged with battery and tried before a jury. At trial, he asserted that he had stabbed his guest in self-defense. In contrast, the nurse testified that Darnell had told her that he had not stabbed his attacker. Darnell was convicted of battery and appealed, contending that his communications to the nurse were privileged and should not have been admissible. In holding that the privilege could not be extended to nurses, this court examined the procedural history of *C.P.* to determine whether the physician/patient privilege should be extended to include nurses. *Id.* at 21–22. In dicta, the court noted that, after *Matter of C.P.* was decided by the Court of Appeals, the legislature enacted Indiana Code section 25–23.6–6–1 which makes communications between a social worker and a client privileged when the communications are made to the social worker in his or her official capacity. *Id.* at 22 n. 3.

Although there is no legislative history to guide us today to know if the social worker/client privilege was enacted as a remedial statute due to this court's holding in *Matter of C.P.*, the statements in *Dar-*

*nell* and the close temporal proximity of the Court of Appeals' decision in *Matter of C.P.* are strong indicators that the statute was intended to be remedial. Thus, because the social worker/client privilege was remedial in nature, the privilege may be applied retroactively and the privilege may apply to the communications in this case.

III. The Homicide Exception

▪ Our examination of the privilege does not end with the determination that the communications were covered by the privilege. The codified social worker/client privilege lists eight exceptions. Two of those exceptions are before us in the present appeal:

Matters communicated to a counselor in the counselor's official capacity by a client are privileged information and may not be disclosed by the counselor to any person, except under the following circumstances:

(1) In a criminal proceeding involving a homicide if the disclosure relates directly to the fact or immediate circumstances of the homicide.

(2) If the communication reveals the contemplation or commission of a crime or a serious harmful act.

Ind.Code § 25–23.6–6–1(1)–(2). We note at the outset that it was entirely within the legislature's prerogative to eliminate the privilege under certain circumstances. *See Whitehead v. State*, 511 N.E.2d 284, 294 (Ind.1987), *cert. denied*, 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773 (1988) (noting that the legislature had the authority to eliminate the physician/patient privilege in cases of homicide).

The State contends that, even if we find the Pelley family counseling information is protected by the privilege, the information

---

1. *General Accident, Fire & Life Assurance Co. v. Tibbs*, 102 Ind.App. 262, 269, 2 N.E.2d 229, 233 (1936)

falls under one of these exceptions. The trial court reviewed the documents in camera. The State has not been able to review the documents, even for the purpose of arguing whether the information contained within relates to the fact or immediate circumstances of the murders of the Pelley family. The State argues that it firmly believes that the documents and Davis's testimony will produce important evidence regarding a motive for the killings and the relationship between Pelley and his family. The State argues that this is especially true as the last communication between the Pelley family and the Center occurred only two days before the murders.

 Claims of privilege must be made and sustained on a question-by-question or document-by-document basis. *In re Kefalidis,* 714 N.E.2d 243, 248 (Ind.Ct.App. 1999) (citing *Hayworth v. Schilli Leasing, Inc.,* 669 N.E.2d 165, 169 (Ind.1996) (addressing a claim of attorney/client and work product privilege)). In *Kefalidis,* the estate of a worker killed in a workplace explosion brought a wrongful death action against a construction company. Two non-party witnesses were deposed by the estate and the witnesses refused to answer certain questions, asserting their right of protection against self-incrimination. The questions they declined to answer related to their relationship with the construction company, the training and experience each had, the relationship between the construction company and other companies and the names of other people who worked at the construction company in the area where the explosion had occurred.

The depositions were adjourned and the trial court conducted a hearing on each witness's assertion of the privilege. During the hearings, both witnesses requested to make an in camera showing of his reasons for asserting the privilege. The trial

court judge denied both requests and the witnesses appealed.

One issue on appeal was whether the trial court had erred when it refused to conduct an in camera proceeding where the witnesses could explain their bases for asserting the privilege. To determine whether the trial court erred, this court examined a number of prior Indiana decisions. For example, in *Owen v. Owen,* 563 N.E.2d 605 (Ind.1990), our supreme court addressed the physician/patient privilege:

> [I]n those rare cases where the physician-patient privilege is properly invoked, it is incumbent on the party seeking to assert the privilege to identify to the court specifically which documents are believed to remain within the privilege, after which the court will review the contested documents in camera to ascertain their entitlement to the protection of the privilege.

*Id.* at 608. Also, in *Owens v. Best Beers, Inc.,* 648 N.E.2d 699, 702 (Ind.Ct.App. 1995), we noted that the applicability of the privilege must be established as to each document sought and that a court could not make such a determination in ignorance of the facts and that, "[i]f necessary, a court may conduct an in camera inquiry to inform itself sufficiently to act." *Id.* Additionally, in *Ray v. St. John's Health Care Corp.,* 582 N.E.2d 464 (Ind.Ct.App. 1991), we addressed a trial court's grant of a blanket claim of "peer review" privilege regarding hospital documents, holding that "the trial court should have conducted an in camera review on a document-by-document basis to determine whether the materials sought were protected by the peer review privilege." *Id.* at 474. Therefore, in *Kefalidis,* we held that the trial court was obliged to consider the witnesses' claim of privilege in camera and on a question-by-question basis. *Kefalidis,* 714 N.E.2d at 250.

In the present case, the trial court reviewed the documents in camera and determined that they did not fall under either of the asserted exceptions to the social worker/client privilege. As this was the duty of the trial court, we cannot now say that the trial court abused its discretion in reviewing the documents in camera.

### Conclusion

The specific language of the social worker/client privilege relates to the time of the disclosure, not the time of the communication. Thus, the communications between the Pelley family and their social worker are privileged. Even if we were to use the date of the communications, the statute granting the privilege is remedial in nature and may be applied retroactively. Also, the trial court did not abuse its discretion in reviewing the documents in camera and finding that the documents did not fall within the exceptions to the privilege. The trial court's quash of the subpoena is affirmed.

Affirmed.

NAJAM, J. concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, Judge, dissenting in part and concurring in part.

I respectfully dissent in part. I disagree with the majority's conclusion that the communication between Pelley and the social worker is privileged because the State sought disclosure of that communication after the social worker-client privilege was established by Indiana Code section

25–23.6–6–1. *See* Op. at 633–634. The purpose of section 25–23.6–6–1 is clearly to protect a client's communications with his or her social worker. As the State observes in its Reply Brief, " '[p]rivileges exist for the protection of communications that society has deemed worthy of a shroud of secrecy, rather than for advancement of truth.' " Reply Br. of Appellant at 2 (quoting 12 Ind. Practice § 501.101 at 559). *See also Matter of C.P.*, 563 N.E.2d 1275, 1278 (Ind.1990) ("The [physician-patient] privilege is intended to inspire full and complete communication by patients so as to further trustful and successful treatment."); *Ley v. Blose*, 698 N.E.2d 381, 383–84 (Ind.Ct.App.1998) (quoting *Green v. State*, 257 Ind. 244, 255, 274 N.E.2d 267, 273 (1971)) ("By safeguarding the confidentiality of communications, the physician-patient privilege seeks 'to inspire full and complete disclosure of knowledge pertinent and necessary to a trustful and proper relationship[.]' ").[2]

Preventing disclosure is the only means to protect the communication between a social worker and a client. Consequently, because the overriding interest in establishing the social worker-client privilege is protection of that communication, the date on which the communication took place should be the determinative date to determine whether the privilege exists.

However, because I agree that section 25–23.6–6–1 should be applied retroactively, the date on which the communication took place is not dispositive of whether the privilege exists. It appears that section 25–23.6–6–1 was enacted in response to

---

**2.** *See also Lahr v. State*, 731 N.E.2d 479, 482 (Ind.Ct.App.2000) (citations omitted) ("The [attorney-client] privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' Furthermore, the privilege allows both the attorney and the client to give complete and confidential information, so that both may be fully advised regarding the attorney's services to the client, and the client is assured that confidences are not violated.").

our court's 1989 decision in *Matter of C.P.*, 543 N.E.2d 410 (Ind.Ct.App.1989), *aff'd*, 563 N.E.2d 1275 (Ind.1990). The close temporal proximity of our opinion, which was handed down in September, 1989, and the enactment of section 25–23.6–6–1, which became effective in July, 1990, certainly supports the conclusion that the statute was intended to be remedial, and therefore, retroactive.[3] *See Martin v. State*, 774 N.E.2d 43, 45 (Ind.2002) (concluding that the General Assembly's amendments to statutes, which provided credit for time served on home detention, were remedial in nature because the amendments were "apparently" enacted in response to a Court of Appeals decision).

Although I disagree with the conclusion that the determinative date is the date of the discovery request, I agree that the statute creating the social worker-client privilege is remedial in nature and should be applied retroactively. Therefore, I concur as to all remaining issues.

3. *See also Darnell v. State*, 674 N.E.2d 19, 21 n. 3 (Ind.Ct.App.1996) ("After *Matter of C.P.* was decided, the legislature enacted [Indiana Code section] 25–23.6–6–1 which makes communications between a social worker and a client privileged when the communications are made to the social worker in his or her official capacity.").